473 A.2d 1361

COMMONWEALTH of Pennsylvania, Appellant,

v.

William RICHARDSON, Appellee.

Supreme Court of Pennsylvania.

Argued Jan. 23, 1984.

Decided April 11, 1984.

360

Eric B. Henson, Deputy Dist. Atty., Sarah Vandenbrook, Asst. Dist. Atty., Philadelphia, for appellant.

John W. Packel, Chief, Appeals Div., Karl Baker, Philadelphia, for appellee.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court which reversed[1] a judgment of sentence imposed by the Court of Common Pleas of Philadelphia County after a jury trial in which the defendant, William Richardson, was found guilty of rape and involuntary deviate sexual intercourse. Reversal by the Superior Court was premised upon that court's conclusion that the trial court erred in refusing to ask, during voir dire, several of the questions posed by defense counsel relating to whether prospective jurors held certain racial prejudices.

The victim, a white woman, claimed that defendant, a black man, forced his way into her apartment, and that he then proceeded to rape and sodomize her. Defendant al-

---

1. *Commonwealth v. Richardson,* 315 Pa.Super. 349, 461 A.2d 1315 (1983).

leged that the sexual intercourse had been consensual. At trial, defense counsel requested that the trial court ask prospective jurors, during voir dire, the following five questions:

1. Are there any people on the jury who are prejudiced in any way against black people?
2. [Defendant] is a black man who is charged with raping a white woman. Because of the races of the two parties involved in this case, do you think you would have any difficulty being fair to either side?
3. Do you believe that black people are generally more dishonest than white people?
4. Do you believe black men like to rape white women?
5. If the woman were to testify that the incident happened one way and [defendant] would testify that the incident happened in an entirely different way, would you tend to believe the testimony of the complainant merely because she was white?

The trial court, however, refused to pose these questions to the prospective jurors, except for the second question, which it rephrased as follows:

I have just been advised that the victim in this case was a white person. You see that the defendant is black. Would these racial differences present such a problem to you that it could interfere with your honest appraisal of the case and interfere with your ability to be completely fair to both the Commonwealth and the Defendant?

■ Superior Court acquiesced in the trial court's rephrasing of the second question and noted that the trial court properly refused to ask the first question because it was very general and not related in any way to the facts of the case. The court correctly reasoned that whether, as the first question inquires, "any people on the jury ... are prejudiced in any way against black people" is irrelevant, for jurors could hold specific attitudes about blacks that would not affect the jurors' abilities to be fair and objective in deciding the case. Superior Court held, however, that

failure to pose questions 3, 4, and 5, or their functional equivalents, to the jury panel, constituted reversible error, and this ruling is the subject of the instant appeal.

Voir dire is an important stage in a criminal proceeding, for it affords counsel an opportunity to determine juror qualifications as well as establish a basis for the effective exercise of peremptory challenges. The scope of voir dire examination is a matter within the discretion of the trial court, and that court's rulings will not be reversed absent an abuse of discretion. *Commonwealth v. Christian*, 480 Pa. 131, 136, 389 A.2d 545, 547 (1978); *Commonwealth v. Futch*, 469 Pa. 422, 427, 366 A.2d 246, 248 (1976). A trial court's rulings concerning the scope of voir dire must be considered in light of the factual circumstances of a particular criminal episode, and, in a given case, circumstances may be presented which render the case racially sensitive, thus making it necessary to inquire into racial attitudes of potential jurors. *Commonwealth v. Christian*, 480 Pa. at 137, 389 A.2d at 547–548; *Commonwealth v. Brown*, 464 Pa. 625, 347 A.2d 716 (1975). In *Christian*, a rape case involving a black defendant and a white victim, there was need on voir dire for inquiry into the possible racial prejudices of potential jurors, since the case was rendered racially sensitive by the prosecution's trial strategy of attempting to establish the black defendant's sexual proclivity for white women. In *Brown*, another rape case in which the defendant was black and the victim white, this Court held that it was error for the trial court to have refused to inquire during voir dire as to whether prospective jurors were specifically biased against seeing a black man and a white woman walking together and holding hands, where, under the facts of the case, such an area of inquiry was considered relevant.

A criminal prosecution is not, however, rendered racially sensitive by the *mere* fact that the defendant is black and the crime victim is white. As this Court stated in *Commonwealth v. Christian*, 480 Pa. at 137 n. 6, 389 A.2d at 548 n. 6,

We do not wish to suggest that merely because a defendant and a victim are members of different social or racial groups there immediately arises a right to explore such relationships on voir dire. The potentially prejudicial impact of such affiliations does become meaningful, however, where membership in a certain group or minority is to be emphasized by the evidence presented at trial. The present case, however, is not one where any racial differences between the defendant and victim were emphasized by evidence presented at trial. Superior Court concluded that the instant case was particularly race-sensitive, as a result of the mere fact that the defense alleged that intercourse between the black defendant and white woman was consensual. We disagree, and fail to find basis for reasoning that merely by raising the defense of consent, a defense so frequently employed in rape cases regardless of whether the defendant and alleged victim are of different races, the case is imbued with a heightened aura of racial sensitivity. Intensive voir dire examination along racial lines, more extensive or specific than that provided by the trial court, was, therefore, not necessary, in view of the absence of race-related issues.[2]

█ The Supreme Court of the United States stated in *Ham v. South Carolina*, 409 U.S. 524, 527, 93 S.Ct. 848, 850, 35 L.Ed.2d 46, 50 (1973), "The trial judge was not required to put the question [as to racial bias] in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." The present record demonstrates that the trial court did, by questioning the jury panel as to whether a racial difference between the defendant and the victim could interfere with the jurors' impartial assessment of the evidence (second question *supra.*, as rephrased by trial court), conduct an inquiry designed to disclose any possible

**2.** Although the question proposed for voir dire in *Commonwealth v. Brown, supra.* is distinguishable from the questions posed in the present case, to the extent that the opinion in *Brown* can be construed as inconsistent with the views expressed herein, as to the specificity of questioning required, it is overruled.

racial prejudices that might adversely impact the defense. We believe that, under the circumstances, where there are not factors present to infuse the case with an enhanced racial sensitivity, and racial differences were not a focus of evidence at trial, the one voir dire question posed by the trial court was sufficiently specific and probing to reveal prejudices which might have bearing upon the case.

Despite the trial court's explicit inquiry into possible racial prejudice, Superior Court held that prospective jurors should have been questioned as to whether they believe that black people are generally more dishonest than white people (third question, *supra.*), whether they believe that black men like to rape white women (fourth question, *supra.*), and whether they would be inclined to believe the testimony of a white victim rather than that of a black defendant merely because the victim was white (fifth question, *supra.*). By posing such questions, however, the trial court would have risked creating racial issues in a case where such issues would not otherwise have existed. Further, the questions would have given credence to base stereotypic racial fallacies, serving no purpose but to exacerbate prejudices which the law should combat with all of its vigor. Asking potentially offensive questions regarding racial stereotypes in a case such as this would serve no legitimate interest of the defendant, but might focus jurors' attentions upon skin color rather than upon the guilt or innocence of the accused, thereby characterizing as important the fact that the defendant is black and the victim is white. Thus, such questions might interfere with the delicate balance of an impartial trial atmosphere, thereby beclouding. the trial with prejudicial suggestions and implications. Hence, since the scope of voir dire examination conducted by the trial court reveals no abuse of discretion, the order of the Superior Court is reversed.

Order reversed.

LARSEN, J., files a concurring opinion.

NIX, C.J., files a dissenting opinion.

LARSEN, Justice, concurring.

I believe that the prosecution of a member of one race on charges of the rape of a victim of another race necessarily presents a race sensitive situation. In such situations, the trial court should permit the questioning of prospective jurors to expose any racial inclinations or biases which might cause a juror to disregard his or her obligation to apply the law impartially to the facts of the case.

In the case at bar, however, the question posed to the prospective jurors was sufficient in my view to expose any such racial inclinations or biases. The court asked:

I have just been advised that the victim in this case was a white person. You see that the defendant is black. Would these racial differences present such a problem to you that it could interfere with your honest appraisal of the case and interfere with your ability to be completely fair to both the Commonwealth and the Defendant?

The refusal of the court to allow more extensive questioning as requested by defense counsel was not, under the circumstances of this case, an abuse of the trial court's discretion in limiting the scope of voir dire examination of prospective jurors.

NIX, Chief Justice, dissenting.

I agree with the majority's conclusion that the trial court's restriction of voir dire would be considered unduly restrictive in a case that is racially sensitive. However, I disagree with the judgment that the instant case did not in fact present a racially sensitive atmosphere.

I believe that it is unrealistic to argue that racial overtones do not permeate the trial where a black man is charged with the rape of a white woman and the defense asserted is consent. This type of situation requires that counsel be allowed to ascertain, of prospective jurors, whether personal deep seated biases would influence such a judgment. Often such predilections are consciously not evident even to the one possessing them and cannot be uncovered by the general question permitted in this case.

The majority asserts that by allowing such inquiry, "... the questions would have given credence to base stereotypic racial fallacies, serving no purpose but to exacerbate prejudices which the law should combat with all its vigor." By denying defense counsel the right to make such inquiry, however, this Court does not avoid the exacerbation of the cancer of the mind and spirit that is racial prejudice. Rather, by concluding that this case does not involve a racially sensitive situation, this Court has "... ignore[d] as judges what we must all know as men ...", as Justice Marshall once so poignantly observed. *Ross v. Massachusetts*, 414 U.S. 1080, 1085, 94 S.Ct. 599, 602, 38 L.Ed.2d 486 (1973) (Marshall, J., dissenting from denial of certiorari). The assumption of such an ostrichlike posture by this Court does not combat prejudice with all the vigor of the law, as the majority asserts, but to the contrary attempts to ignore it and thereby allows it to flourish unchecked. I dissent.