616 A.2d 1359

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Brian GLASPY, Appellant.**

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Victor JACKSON, Appellant.**

Supreme Court of Pennsylvania.

Argued March 10, 1992.

Decided Nov. 13, 1992.

---

Kim Wm. Riester, Scott, Vogrin & Riester, Pittsburgh, for appellant, Glaspy.

Timothy Creany, Dist. Atty., Christian A. Fisanick, Chief Deputy, Appellate Div., Ebensburg, for appellee in No. 12 W.D. Appeal Dkt. 1991.

David J. Kaltenbaugh, Asst. Public Defender, Ebensburg, for appellant, Jackson.

Timothy P. Creany, Dist. Atty., Dennis M. McGlynn, Asst. Dist. Atty., Christian A. Fisanick, Chief Deputy, Appellate Div., Ebensburg, for appellee in No. 13 W.D. Appeal Dkt. 1991.

574

Before NIX, C.J., and LARSEN, FLAHERTY,
McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

OPINION ANNOUNCING THE JUDGMENT
OF THE COURT

NIX, Chief Justice.

Appellants Brian Glaspy and Victor Jackson were, at the
time of the incident, black students enrolled in the Johnstown
Campus of the University of Pittsburgh. They have been
found by a jury to be guilty of Rape,[1] Involuntary Deviate
Sexual Intercourse [2] and Indecent Assault.[3] Glaspy was also

1. A person commits a felony of the first degree when he engages in
sexual intercourse with another person not his spouse:
   (1) by forcible compulsion;
   (2) by threat of forcible compulsion that would prevent resistance by
   a person of reasonable resolution;
   (3) who is unconscious; or
   (4) who is so mentally deranged or deficient that such person is
   incapable of consent.
   18 Pa.C.S.A. § 3121.

2. A person commits a felony of the first degree when he engages in
deviate sexual intercourse with another person:
   (1) by forcible compulsion;
   (2) by threat of forcible compulsion that would prevent resistance by
   a person of reasonable resolution;
   (3) who is unconscious;
   (4) who is so mentally deranged or deficient that such person is
   incapable of consent; or
   (5) who is less than 16 years of age.
   18 Pa.C.S.A. § 3123.

3. A person who has indecent contact with another not his spouse, or
causes such other to have indecent contact with him is guilty of
indecent assault, a misdemeanor of the second degree, if:
   (1) He does so without the consent of the other person;
   (2) He knows that the other person suffers from a mental disease or
   defect which renders him or her incapable of appraising the nature of
   his or her conduct;
   (3) He knows that the other person is unaware that a [sic] indecent
   contact is being committed;
   (4) He has substantially impaired the other person's power to ap-
   praise or control his or her conduct, by administering or employing
   without the knowledge of the other drugs, intoxicants or other means
   for the purpose of preventing resistance; or

convicted of Simple Assault.[4] Glaspy received an aggregate sentence of three to ten years imprisonment, and Jackson was sentenced to forty months to ten years imprisonment.

The factual matrix out of which this matter arises is as follows. Appellants attended a small party in one of the dormitory suites on the night of March 23, 1987. The victim was also a student at the time and was in attendance. On the night in question, the party was being held in a mutual friend's dormitory suite.

What happened next at the party is the basis of this appeal. The appellants have testified and continue to allege that what occurred that night was consensual sexual activity between Jackson and the victim, with Glaspy participating only to the extent of rubbing up against the victim while she danced and had sexual relations with Jackson. The victim's testimony was that Glaspy held her while Jackson removed her clothes and performed various sexual acts on her, and that Glaspy also penetrated her anally. The issue of the victim's consent was heatedly challenged at trial and various witnesses testified as to their own perceptions of her consent or lack thereof. The jury accepted the victim's allegations and convicted the appellants on all counts.

During the empanelling of the jury, defense counsel moved for individual *voir dire* to be conducted for all the jurors to explore any racial prejudices that the jurors may harbor. Defense counsel characterized this case as a "racially sensitive" case requiring heightened scrutiny of the jurors. The trial court denied the initial request for individual *voir dire*.

(5) The other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over him.
18 Pa.C.S.A. § 3126.

**4. (a) Offense defined.**—A person is guilty of assault if he:
(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;
(2) negligently causes bodily injury to another with a deadly weapon; or
(3) attempts by physical menace to put another in fear of imminent serious bodily injury.
18 Pa.C.S.A. § 2701(a).

During the questioning by the court, one prospective juror stated that he would not be able to render a fair verdict because of the race of the defendants. Defense counsel renewed the motion for individual *voir dire* and the trial judge again denied defense counsel's motion for individual *voir dire.*

On appeal, a divided panel of the Superior Court affirmed the conviction of appellants. 394 Pa.Super. 629, 569 A.2d 1382, 394 Pa.Super. 630, 569 A.2d 1383. In dissent, Judge Johnson of the Superior Court wrote that he would grant a new trial on the following grounds: first, that the prospective jurors should have been questioned individually; second, that the victim should have been sequestered during the presentation of the Commonwealth's case; third, that the closing argument of the Commonwealth was fraught with prejudicial comments and arguments that warranted reversing the conviction. We granted allocatur on these three issues. *Commonwealth v. Glaspy,* 527 Pa. 598, 589 A.2d 688 (1991); *Commonwealth v. Jackson,* 527 Pa. 598, 589 A.2d 689 (1991). For the reasons that follow, we reverse the Superior Court, vacate the judgments of sentence, and grant the defendants a new trial.

Appellants Glaspy and Jackson argue that the trial court incorrectly disallowed individual *voir dire* questioning about any particular racial prejudices. Appellants concede that it is within the trial court's discretion to conduct individual *voir dire,* but cite *Commonwealth v. Christian,* 480 Pa. 131, 389 A.2d 545 (1978), as requiring individual *voir dire* when the court is faced with a racially sensitive case.

Appellee responds that the only racial element in this case is that the co-defendants are black and the victim is white. Appellee relies on *Commonwealth v. Richardson,* 504 Pa. 358, 473 A.2d 1361 (1984), to support its position that the bare fact that the victim is white and the assailants are black does not render this a racially sensitive case. For the reasons that follow, we agree with the appellants and hold that defense counsel should have been allowed to conduct individual *voir*

*dire.*[5]

Under the Rules of Criminal Procedure, in all non-capital cases, "the trial judge shall select one of [two] alternative methods of *voir dire* ". Pa.R.Crim.P. 1106(e). Therefore, the defendants had no absolute right to conduct individual *voir dire* of the jurors. The trial judge has the discretion to conduct individual *voir dire* of prospective jurors. *Commonwealth v. Berrigan,* 509 Pa. 118, 135, 501 A.2d 226, 235 (1985) ("[a]bsent an abuse of such discretion, a reviewing court cannot disturb the trial court's actions"); *Commonwealth v. Freeman,* 295 Pa.Super. 467, 474, 441 A.2d 1327, 1331 (1982); *Commonwealth v. Mayo,* 272 Pa.Super. 115, 119, 414 A.2d 696, 698 (1979).

In *Commonwealth v. Freeman,* the Superior Court upheld a conviction for rape, involuntary deviate sexual intercourse, burglary and terroristic threats. 295 Pa.Super. 467, 441 A.2d 1327 (1982). Appellant in that case argued that the trial court should have allowed individual *voir dire* to explore any racial prejudices or biases of the jurors because he was a black defendant accused of sex crimes against a white victim. *Id.* at 474, 441 A.2d at 1331. The Superior Court held:

Appellant has failed to present any concrete evidence that this case involved especial racial considerations which might best be dealt with through individual questioning. Additionally, he does not claim that the actual panel chosen was racially biased against him. Rather, although he admits that he was permitted by the court to probe any racial bias, he complains that the jurors were constrained by peer pressure implicit in collective voir dire to admit to such.

... Under these circumstances we cannot conclude that the trial of crimes involving defendants whose race differs from that of their alleged victims automatically triggers the

5. The second issue raised is whether the Superior Court erred when it affirmed the trial court's refusal to sequester the victim in this case. The third issue raised is whether there was prosecutorial misconduct in the Commonwealth's closing argument to the jury. Because we grant the appellant's requested relief on the first issue, we will not address these two issues.

need for individual *voir dire* or that such a ruling is more compelling in sexual prosecutions.

*Id.* at 475, 441 A.2d at 1331 (citation omitted).[6]

In this case, however, a prospective juror introduced racial considerations into the case when he stated that he could not render a fair verdict due to the race of the defendants.

In *Commonwealth v. Richardson*, 504 Pa. 358, 473 A.2d 1361 (1984), this Court reversed the Superior Court's order granting a new trial to a black defendant accused of raping a white victim and who was not allowed to question the jurors on potential racial bias. The majority of this Court stated that "[b]y posing such questions, however, the trial court would have risked creating racial issues in a case where such issues would not otherwise have existed." *Id.* at 364, 473 A.2d at 1364. In this case, a prospective juror admitted during group *voir dire* that he could not render a fair verdict due to

6. The Supreme Court of the United States has recognized that cases of violent crime between racial or ethnic groups may raise special racial considerations requiring an expanded voir dire. *See, e.g., Rosales–Lopez v. United States*, 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981); *Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976); *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931). *Cf. Mu'Min v. Virginia*, —— U.S. ——, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991).

In *Rosales–Lopez v. United States*, 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981), seven members of the Court were of the view that in the case of a violent crime, a defendant has the right to request voir dire of jurors exploring any racial prejudices where the defendant and the victim are members of different racial or ethnic groups. Justice White, writing for four members of the Court, stated:

*Aldridge [v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931)] and *Ristaino [v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976)] together, fairly imply that federal trial courts must make such an inquiry when requested by a defendant accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups.... It remains an unfortunate fact in our society that violent crimes perpetrated against members of other racial or ethnic groups often raise such a possibility.

*Id.* at 192, 101 S.Ct. at 1636, 68 L.Ed.2d at 31. The three dissenting justices in *Rosales–Lopez* would have established a broader rule, not limited to violent crimes, but for any criminal prosecution in which defense counsel perceives "a risk of such irrational prejudice". *Id.* at 202, 101 S.Ct. at 1641.

racial considerations. At that point the racial issue existed, and it was necessary for the trial court to allow counsel to examine the remaining jurors individually to ascertain whether any juror harbored any racial prejudices or biases that would affect that juror's ability to render a fair verdict. Thus, this case is distinguishable from *Richardson*.[7]

We are not holding here that this jury was racially motivated. However, because the members of the jury were not examined individually, we cannot state that the jury was free of any prejudice that might have affected its judgment. As this writer stated previously, "[t]his type of situation requires that counsel be allowed to ascertain, of prospective jurors, whether personal deep seated biases would influence such a judgment. Often such predilections are consciously not evident even to the one possessing them and cannot be uncovered by the general question permitted in this case." *Richardson*, 504 Pa. at 365, 473 A.2d at 1364–65 (Nix, C.J., dissenting). In this case, counsel should have been allowed to question jurors individually in order to uncover any deep seated prejudices they might harbor. The failure of the trial judge to allow counsel to conduct individual *voir dire* was an abuse of his discretion. Therefore, unable to conclude that the *voir dire* in this case ensured the defendants a fair and impartial jury, we are constrained to grant a new trial to the defendants. *Commonwealth v. Christian*, 480 Pa. 131, 140, 389 A.2d 545, 549 (1978).[8]

7. In his dissenting opinion, Justice Larsen states that the "Rules of Criminal Procedure provide for alternative methods of *voir dire* at the discretion of the trial court. If the desired result is to remove that discretion from the trial judge and abolish group *voir dire*, the proper method to reach that result is to amend the Rules of Criminal Procedure...." Dissenting opinion at p. 581. We cannot accept this inflexible rule. There is nothing in Rule 1106 that requires the judge to choose one type of *voir dire* and to bind him forever to that system of *voir dire*. It is our view that once group *voir dire* reveals the existence of racial prejudice within the juror pool, it is incumbent upon the trial court to examine individually the remainder of the juror pool to reveal any bias a juror may harbor.

8. "We think it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualifi-

The judgments of sentence are vacated and the appellants are granted a new trial.

The late Mr. Justice McDermott did not participate in the decision of these cases.

CAPPY, J., files a concurring opinion.

ZAPPALA, J., concurs in the result.

LARSEN and PAPADAKOS, JJ., file dissenting opinions.

CAPPY, Justice, concurring.

I join in the majority opinion and write separately to state that I would go further and specifically overrule *Commonwealth v. Richardson*, 504 Pa. 358, 473 A.2d 1361 (1984), as it applies to any case involving allegations of sexual misconduct where the parties are of different races—especially where the victim is white and the assailants are African–American.

In my view, to conclude that allegations of rape or other sexual misconduct involving black males and white females is not racially sensitive per se, is to close your eyes to reality.

LARSEN, Justice, dissenting.

The majority states that this case became racially sensitive only when a prospective juror admitted during group *voir dire* that he was racially biased. The majority concludes that "[a]t that point the racial issue existed, and it was necessary for the trial court to allow counsel to examine the remaining jurors individually...." I dissent.

As I stated in my concurring opinion in *Commonwealth v. Richardson*, 504 Pa. 358, 473 A.2d 1361 (1984):

I believe that the prosecution of a member of one race on charges of the rape of a victim of another race *necessarily* presents a race sensitive situation. In such situations, the trial court should permit the questioning of prospective jurors to expose any racial inclinations or biases which

cation were barred." *Aldridge v. United States*, 283 U.S. 308, 315, 51 S.Ct. 470, 473, 75 L.Ed. 1054, 1058 (1931) (Hughes, C.J.).

might cause a juror to disregard his or her obligation to apply the law impartially to the facts of the case. (Emphasis added).

The Rules of Criminal Procedure specifically provide that, in all non-capital cases, the trial judge shall select the method of *voir dire*—either individual *voir dire* or, in the alternative, group *voir dire*. Pa.R.Crim.P. 1106(e). In my view, group *voir dire* was sufficient to expose any racial inclinations or biases of the jury in the case herein. The fact that a prospective juror admitted during group *voir dire* that he was racially biased demonstrates that group *voir dire* was effective in ensuring a fair and impartial jury in this case.

The propriety of a trial court's exercise of discretion "may be assessed by the appellate process when it is apparent there was a *gross and palpable* abuse of that discretion." *Commonwealth v. Powell*, 527 Pa. 288, 297, 590 A.2d 1240, 1244 (1991) (emphasis added). Given the effectiveness of group *voir dire* in this case, there was no "gross and palpable" abuse here. Thus, the refusal of the trial court to allow individual *voir dire*, under the circumstances presented in this case, was not an abuse of its discretion in selecting between alternative methods of *voir dire*.

By holding that the trial court abused its discretion, the majority opinion creates an anomalous situation. In effect, the majority holds that, if group *voir dire* is effective in achieving its goal of ferreting out racial biases or inclinations, then group *voir dire* is not appropriate and the alternative method, individual *voir dire*, must be utilized. Whereas, if there is no evidence that group *voir dire* was effective (e.g., if none of the prospective jurors admitted racial bias), then group *voir dire* is proper.

The Rules of Criminal Procedure provide for alternative methods of *voir dire* at the discretion of the trial court. If the desired result is to remove that discretion from the trial judge and abolish group *voir dire*, the proper method to reach that result is to amend the Rules of Criminal Procedure—not to manipulate the facts in order to create situations, such as this, in which the trial court really has no choice. Because the

Rules specifically provide for either group or individual *voir dire* at the trial court's discretion and because I believe that group *voir dire* was sufficient to expose racial biases and inclinations in this case, I would affirm.

PAPADAKOS, Justice, dissenting.

I dissent since I perceive that the Chief Justice, writing the Opinion Announcing the Judgment of the Court, seeks to establish a *per se* rule that, henceforth, in any racially mixed criminal proceeding, the trial judge is best advised to forego discretion and conduct individual *voir dire* to ferret out any deep seated racial biases of the individual venirepersons.

In this case, the Chief Justice finds the existence of racial sensitivity, that is, a racial issue existed, when "... a prospective juror admitted during the group *voir dire* that he could not render a fair verdict due to racial considerations. *At that point the racial issue existed,* and it was necessary for the trial court to allow counsel to examine the remaining jurors individually to ascertain whether any juror harbored any racial prejudices or biases that would affect that juror's ability to render a fair verdict." (Emphasis added) (Opinion, p. 1362).

The Chief Justice does not explain why "at that point the racial issue existed" or why, if it did exist, it was not removed by the removal of that venireman from the panel and a request made to the remaining panel if anyone had the same problem.

In *Commonwealth v. Richardson,* 504 Pa. 358, 473 A.2d 1361 (1984), we decided that individual *voir dire* in non-capital cases would be appropriate where the defense could demonstrate that "membership in a certain group or minority would be emphasized by the evidence presented at trial," thus making the case "race-sensitive."

The essential facts in this case with respect to the potential bias of a jury are the same as in *Richardson.* The defendants are black and the victim is white and the defendants assert the defense of consensual intercourse. The Chief Justice at-

tempts to embellish these essential facts by adding that one juror admitted during *voir dire* that he would be unable to render a fair verdict due to racial bias.

Incredibly, the Chief Justice asserts that a racial issue was created by the admission of one juror during *voir dire* that he would not be able to judge the case fairly because of racial prejudice. To the contrary, what I perceive is that the panel was cleansed of racial bias and that the group *voir dire* had been effective.

Would the Chief Justice require individual *voir dire* if a venireman stood up in a case involving an assault upon a police officer and said that I can not judge this case fairly because I don't trust policemen or I am partial to policemen?

Would the Chief Justice require individual *voir dire* in any case in which a venireman stood up and professed a prejudice against any of the parties or the prosecutors, etc., etc., etc.?

The Chief Justice's concern for the avoidance of racial sensitivity in our criminal cases is laudable but misplaced in this case. Racial sensitivity is not created by the mere fact that a defendant is black, a victim is white, or that the defendant is charged with rape and the defense is that the intercourse was consensual. This contention was specifically rejected in *Richardson* where we concluded that a heightened sensitivity would be required when it could be demonstrated that the differences between the defendant and the victim would be emphasized at trial. No such allegations were made here and for that reason alone, *Richardson* is controlling in this case.

The Chief Justice's effort is no more and no less than an attempt to expand the scope of circumstances requiring individual *voir dire*. The attempt is ill-advised and unwarranted and, in any event, cannot properly be done without overruling *Richardson.*

I would affirm the judgments of sentence.