J-S83005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROCKY WILLIAM ANTILL | : | |
| | : | |
| Appellant | : | No. 194 WDA 2018 |

Appeal from the Judgment of Sentence December 11, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0008977-2016

BEFORE:  PANELLA, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.:                    **FILED JULY 09, 2019**

Rocky William Antill appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas after he was charged with numerous crimes related to the sexual abuse of a child, namely his stepdaughter. On appeal, Antill raises challenges to the court's rulings during *voir dire* and the court's evidentiary rulings, as well as a challenge to the discretionary aspects of his sentence. After a thorough review of the record, we affirm the judgment of sentence.

Antill was arrested and charged with one count each of rape of a child, involuntary deviate sexual intercourse with a child, aggravated indecent assault, unlawful contact with a minor, indecent assault, endangering welfare of children, corruption of minors, and recklessly endangering another person.

After his first trial ended in a mistrial, Antill proceeded to a second jury trial in which he was found guilty on all counts. He was sentenced to an aggregate sentence of two-hundred to four-hundred and fifty months of incarceration followed by ten years of probation.

Antill filed a post-sentence motion challenging the weight of the evidence and the discretionary aspects of his sentence. The trial court denied the motion. This timely appeal follows.

In Antill's first issue on appeal, he contends the trial court erred by permitting the Commonwealth to ask prospective jurors during *voir dire* examination the following question: "Under Pennsylvania law, the testimony of the victim standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty if the testimony of the victim convinces you beyond a reasonable doubt that the defendant is guilty. Would you be able to follow this principle of law?" Commonwealth's Proposed Voir Dire Questions, 2/7/17, at ¶ 2.[1]

He asserts the question was not designed for proper purposes but rather was designed to determine how receptive the prospective juror might be to

_____

[1] Both the Commonwealth and Antill agreed to proceed with *voir dire* outside the presence of a court reporter. Therefore, there is no transcript of the *voir dire* proceeding. **See** Stipulation to Supplement Certified Record on Direct Appeal Pursuant to Pa.R.A.P. 1926(a)(2), filed 1/3/19. However, the Commonwealth does not dispute that the prosecutor asked the proposed question during *voir dire*. **See** Appellee's Brief, at 4. Under these circumstances, we conclude that our review of the issue is not hampered by the absence of a transcript, and decline to find the issue waived.

different versions of the case that the Commonwealth could present. Antill contends this was not a proper subject for *voir dire*. Further, Antill asserts the question covers subject matter falling within the province of the court and is in the nature of a jury instruction and therefore was legally inappropriate.

The scope of *voir dire* examination is a matter within the discretion of the trial court, and that court's ruling will not be reversed absent an abuse of discretion. **Commonwealth v. Richardson**, 473 A.2d 1361, 1363 (Pa. 1984). A trial court's rulings concerning the scope of *voir dire* must be considered in light of the factual circumstances of a particular criminal episode. **Id**.

"It is well settled that the sole purpose of examination of jurors under *voir dire* is to secure a competent, fair, impartial and unprejudiced jury." **Commonwealth v. Ellison**, 902 A.2d 419, 423 (Pa. 2006). "It is only when the court permits the [jury] selection process to impugn the fundamental qualities of competence, fairness, and impartiality that we may conclude that a palpable abuse of discretion has been committed." **Commonwealth v. Noel**, 104 A.3d 1156, 1171 (Pa. 2014) (internal quotation marks and citations omitted). However, "[v]oir dire is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies." **Commonwealth v. Paolello**, 665 A.2d 439, 451 (Pa. 1995).

Antill argues that "questions which are in the nature of jury instructions are wholly inappropriate for *voir dire* examination." Appellant's Brief, at 18. In support of this proposition, Antill cites to ***Commonwealth v. Bright***, 420 A.2d 714, 717 (Pa. Super. 1980). Upon reviewing ***Bright***, we conclude Antill's argument stretches the language of that opinion beyond the breaking point.

In ***Bright***,[2] the defendant sought to ask prospective jurors regarding their ability to dissent from the views of the majority of their fellow jurors. ***See id***. The trial court refused the defendant's request. ***See id***. Importantly, this Court held that "the question was in the nature of a jury instruction and that, since the court gave proper instructions, no error occurred from the refusal to allow the question." ***Id***. After examining the trial court's instructions to the jury, the ***Bright*** panel concluded "the [trial] court's opening remarks and closing instructions … clearly demonstrate the trial court adequately and correctly instructed the jury." ***Id***.

As a result, the ***Bright*** Court did not affirmatively hold that the proposed instruction should be excluded due to its similarity to a jury instruction. Instead, the Court merely found that the trial court did not err in excluding

---

[2] Antill also cites to ***Commonwealth v. Perea***, 381 A.2d 494 (Pa. Super. 1977), ***Commonwealth v. Hoffman***, 398 A.2d 658 (Pa. Super. 1979), and ***Commonwealth v. Ritter***, 615 A.2d 442 (Pa. Super. 1992). Each of these precedents are similar to ***Bright***, as in each case this Court reviewed a trial court ruling denying a requested jury instruction. ***See Perea***, at 496; ***Hoffman***, at 660; ***Ritter***, at 446-447. None of them created the bright line rule sought by Antill here.

the question since the trial court properly instructed the jury on the relevant points of law.

Here, Antill is attempting to turn **Bright** into a bright-line rule that would effectively eviscerate our standard of review. We decline to accept Antill's invitation to create a new standard for *voir dire* proceedings.

Turning to the circumstances at hand, the Commonwealth's case was based almost entirely on the victim's testimony. **See** N.T., Jury Trial, 7/6/17, at 32 (prosecutor admitting, during opening statements, that the Commonwealth would present no forensic evidence); N.T., Jury Trial, 7/7/17 at 24-26 (medical doctor testifying that victim's examination results were not significantly different from those expected from a child who had not been sexually abused). Pursuant to this state of affairs, we cannot conclude the court abused its discretion when it permitted a question designed to expose any fixed opinions of the jurors regarding the lack of physical or corroborating evidence. As such, the question was used to "secure a competent, fair, impartial and unprejudiced jury" and was not used to ascertain the effectiveness of a potential trial strategy. **See Ellison**, 902 A.2d at 423-424.

Antill also argues that the language used in the question does not conform to the law. Specifically, he contends the question omits any reference to the Commonwealth's burden of beyond a reasonable doubt. We agree that the question, as written, does not accurately state the law. However, this conclusion does not automatically render the trial court's decision to allow the

question an abuse of discretion. The issue at hand is whether the question impaired the competence, fairness or impartiality of the jury. **See Noel**, 104 A.3d at 1171.

In its opening statement, the Commonwealth informed the jury that it was "solely on the Commonwealth to prove to you beyond a reasonable doubt that the defendant is guilty" N.T., Jury Trial, 7/6/17, at 19; **see also id**., at 20 ("the Commonwealth … has the burden of proof beyond a reasonable doubt of every element of every offense. … We embrace that burden"). More importantly, the trial court properly instructed the jury that Antill was presumed innocent until the Commonwealth established, beyond a reasonable doubt, every element of every crime charged. **See** N.T., Jury Trial, 7/7/17, at 264. Further, when the jury requested a clarification on the instruction, the court informed them "you may find the defendant guilty if the testimony of [the victim] convinces you beyond a reasonable doubt that the defendant is guilty." N.T., Jury Trial, 7/10/17, at 5.

As a result, we cannot conclude that the question deprived Antill of a competent, fair, and impartial jury. Antill's first issue is without merit.

In his second issue, Antill contends the trial court abused its discretion by permitting the Commonwealth to present an expert opinion through a witness who had never been qualified as an expert. While testifying regarding what impact a delay between a sexual assault and the beginning of the investigation would have on his investigation practices, Detective Daniel

Mayer briefly stated his observations of why children who have experienced sexual abuse have delayed reporting in his experience. Antill contends this testimony was in fact expert testimony, as it relied on specialized knowledge beyond that possessed by the average layperson.

When considering the admission of evidence, our standard of review is very narrow. Our review of a trial court's evidentiary ruling is limited to determining whether the trial court abused its discretion. *See Commonwealth v. Dengler*, 890 A.2d 372, 379 (Pa. 2005). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id*. (citation omitted). Finally, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (citation omitted).

Pennsylvania Rule of Evidence 701 states that in cases where a witness is not testifying as an expert, his or her opinion testimony must be limited to what is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 701." Pa.R.E. 701.

The evidentiary ruling at issue here arose while the Commonwealth was questioning Detective Mayer about his investigative procedures. The prosecutor asked Detective Mayer what impact an over four month delay between a sexual assault and the beginning of the investigation would have on his investigation. He answered, "[i]t has been my experience over the years with victims of sexual and physical assault that … many times victims, especially younger victims, for a whole host of reasons –". N.T., Jury Trial, 7/7/17, at 7. Defense counsel objected, noting that Detective Mayer was not an expert. *See id*., at 7-8. The trial court found that Detective Mayer was testifying to his procedures for opening an investigation, not as an expert, and overruled the objection. *See id*., at 8.

After defense counsel acquiesced to the trial court's reasoning, the examination continued.

> [Prosecutor:]          Thank you, Your Honor.
>
> [Detective Mayer:]      So over the years of working these types of cases we see delayed reporting especially with younger victims, for a whole host of reasons. Whether they're confused or embarrassed or because sometimes it's a family member and they're concerned about the outcome. That is not unusual, but we run into that quite often.
>
> [Prosecutor:]          Does that create any challenges for you as an investigator?
>
> [Detective Mayer:] If something occurs and we can get right on it. There are things we want to try to do to preserve a scene or locate items of evidence. So a delay in reporting for us, it kind of puts us behind in terms of recovering things.

*Id*.

In **Commonwealth v. Dunkle**, 602 A.2d 830 (Pa. 1992), our Supreme Court held that expert testimony concerning typical behavior patterns exhibited by sexually abused children is inadmissible because such evidence was not generally accepted in the field in which it belonged, was not probative of child sexual abuse, and concerned subjects which were within the range of common experience. **See** 602 A.2d at 834-838.

While it may appear **Dunkle** is dispositive of this issue, **Dunkle**, and other matters prohibiting expert testimony regarding victim responses in sexual assault matters, predates our legislature's enactment of 42 Pa.C.S.A. § 5920, entitled "expert testimony in certain criminal proceedings." **See** 42 Pa.C.S.A. § 5920 (passed June 29, 2012, effective August 28, 2012). Pursuant to that statute, in an appropriate proceeding, a qualified expert may testify regarding specific types of responses and behaviors that victims of sexual abuse often exhibit. 42. Pa.C.S.A. § 5920(b)(2).

However, to date, no court has expressly held that by enacting section 5920, the General Assembly legislatively overruled **Dunkle**'s holding regarding testimony about child victim responses as being within the knowledge of an average layperson. **See Commonwealth v. Maconeghy**, 171 A.3d 707, 709 n.2 (Pa. 2017) (noting that **Dunkle** is "impacted by the enactment of [s]ection 5920 of the Judicial Code, which now permits certain expert witnesses to testify to facts and opinions regarding specific types of victim responses and behaviors," but stating a discussion of the specific effect

of the statute on *Dunkle* was beyond the scope of the opinion); **See also** **Commonwealth v. Olivo**, 127 A.3d 769, 781 (Pa. 2015) (describing the portion of *Dunkle* regarding child victim responses being within the knowledge of a lay juror as a holding based upon "then-current research," but not addressing whether the holding was still valid in light of section 5920); **Commonwealth v. Carter**, 111 A.3d 1221, 1223-224 (Pa. Super. 2015) (observing that *Dunkle* pre-dates section 5920, holding that trial court properly permitted expert to testify regarding child victim responses pursuant to section 5920, and rejecting Carter's argument that General Assembly had enacted legislation on an issue previously ruled upon by the Supreme Court in an area specifically consigned to its authority, thereby violating separation of powers).

We find it unnecessary to reach the specific issue of the effect of section 5920 on cases of this kind, as we find Antill has not demonstrated that he suffered prejudice from Detective Mayer's testimony. We note the Commonwealth offered another witness, Jamie Mesar, "as an expert in the field of child sex assault victim behavior." N.T., Jury Trial, 7/7/17, at 82. The trial court found that Mesar qualified as an expert "with regard to the behaviors of children who have been victims of sexual assault." **Id**., at 84. Antill does not challenge this qualification on appeal.

Mesar testified at length to the same concerns that Detective Mayer identified in the passage previously quoted. **See id**., at 85-91. Therefore, the

jury received the same evidence from a witness who was explicitly qualified as an expert in the relevant field. As a result, we cannot conclude Antill suffered any prejudice from Detective Mayer's brief mention of some reasons why child sex assault victims have delayed reporting in his experience.

Antill contends that the previously quoted testimony from Detective Mayer differs substantially from Mesar's expert opinion testimony. We disagree. Detective Mayer noted that there were "a whole host of reasons" for delayed reporting, and proceeded to name three: confusion; embarrassment; and concern over the outcome of the investigation of a family member. *See* N.T., Jury Trial, 7/7/17, at 7-8.

Mesar testified that "disclosure of child abuse comes out in many different ways… disclosures can happen in many different ways and also happens for many different reasons." *Id*., at 85. This is substantially similar to Detective Mayer's testimony that there are "a whole host of reasons" for delayed disclosure. *Id*., at 7.

Mesar also opined that delayed disclosure is often caused by the victim's failure to understand the severity of the abuse. *Id*., at 85. This testimony is substantially similar to Detective Mayer's opinion that "confusion" is a cause of delayed disclosure.

Mesar also identified other reasons for delayed disclosure.

> There could be threats made by a perpetrator that if a child were to tell something bad would happen to them or a family member or someone else the child is connected to.

The delay could be due to the fact the child has a lot of blame for what's happened. They don't understand so they're holding their own shame and guilt. They don't want to let other ones know what has happened to them because they may believe that once their story is out, everybody is going to identify them as a child that something has happened to them.

*Id*., at 86. This testimony is substantially similar to Detective Mayer's testimony that delayed disclosure may be caused by embarrassment or concern about the impact an investigation would have on a family member. As a result, Antill did not suffer any undue prejudice from Detective Mayer's testimony regarding the causes of delayed disclosure.

In his final issue on appeal, Antill argues the trial court abused its discretion by imposing a manifestly unreasonable sentence and by failing to address each of the factors required by 42 Pa.C.S.A. § 9721(b). He further contends the trial court failed to consider mitigating factors. Antill concedes his argument raises a challenge to the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the

sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010) (citations omitted; brackets in original).

Here, Antill preserved his issue through a timely motion for reconsideration of the sentence imposed, and filed a timely appeal. Counsel has included the required Rule 2119(f) statement. We therefore review the Rule 2119(f) statement to determine if Antill has raised a substantial question.

We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. **See Commonwealth v. Tirado**, 870 A.2d 362, 365 (Pa. Super. 2005). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Id**. (citation and emphasis omitted); **see also** Pa.R.A.P. 2119(f).

Antill "must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." **McAfee**, 849 A.2d at 274 (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." **Tirado**, 870 A.2d at 365.

In Antill's Rule 2119(f) statement, he claims that the trial court abused its discretion in sentencing by imposing a manifestly excessive sentence "constituting too severe a punishment and, in so doing, failed to offer reasons

for its sentence that comport with the considerations required by [42 Pa.C.S.A. § 9721(b)]". Appellant's Brief, at 47. As this claim raises a substantial question, we proceed to examine the merits of Rivera's sentencing challenge. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1266 (Pa. Super. 2014) (*en banc*) ("[A]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question whereas a statement that the court failed to consider facts of record, though necessarily encompassing the factors of § 9721, has been rejected.")

Our standard of review for a challenge to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted).

Here, the trial court reviewed a pre-sentence report. Where the trial court had the benefit of reviewing a pre-sentence report, we must

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any

- 14 -

extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

***Commonwealth v. Hallock***, 603 A.2d 612, 616 (Pa. Super. 1992). Further,

the court explained the reasons for the sentence:

Mr. Antill, please step up to the microphone. I did preside over the jury trial in this case and I am very aware of the testimony.

I have also reviewed the pre-sentence investigative report and considered his history, which does include some evidence of aggressive, assaultive behavior based on the criminal record and the PFA violation. That would be consistent with the trial testimony as well.

I also have considered the memorandum in aid of sentencing as well as the evaluative report of the [Sexual Offender Assessment Board] as we have discussed.

And the [Sexual Offender Assessment Board] report does note that his behavior is predatory. He violated a position of trust and continued to do so by threats to keep [victim] quiet.

In light of all of the factors, including the fact that he does not have a history of mental health or drug and alcohol by his report, his rehabilitative needs appear to be centered around his sexually assaultive behavior.

N.T., Sentencing Hearing 12/11/18, at 47-48.

As the trial court in this case had the benefit of a pre-sentence report

as well as a memorandum in aid of sentencing and an evaluative report of the

Sexual Offender Assessment Board, we conclude that it considered all relevant sentencing factors. Antill's final issue is without merit.

As we find none of Antill's issues merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/2019