J-A23017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAHEEM WILLIAMS | : | |
| | : | No. 1249 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence January 20, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015842-2013,
CP-51-CR-0015843-2013,
CP-51-CR-0015844-2013

BEFORE:   PANELLA, J., DUBOW, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 22, 2017**

Appellant, Raheem Williams, appeals from the judgment of sentence following his convictions on multiple counts of attempted murder and other related charges. We affirm.

For a recitation of the complete factual background and procedural history of this case, we direct the interested reader to the trial court's comprehensive opinion. **See** Trial Court Opinion, filed 12/22/16, at 1-11.

Briefly, in August 2013, a fistfight between two groups of men escalated into a shootout, with two men firing weapons into the crowd. One person was wounded. The next day, two other people connected with the fight were wounded in another shooting outside of one of the victims' homes. Police questioned a witness, Rakeem Hall, who identified Appellant in a photo array

_____

\*   Former Justice specially assigned to the Superior Court.

as one of the men who began firing into the crowd. Hall also stated that Appellant shot Hall's brother and a neighbor outside of Hall's residence. Kaleem Shelton, who separately pled guilty to charges in connection with the first shootout, likewise identified Appellant as the other gunman firing into the crowd, and as the person who shot Hall's brother and neighbor.

Following his arrest, Appellant filed a motion to suppress the photo identification made by Hall. The court denied the motion, and Appellant proceeded to a jury trial. At trial, both Hall and Shelton refused to testify, and their prior signed statements were admitted into evidence.[1] The jury convicted Appellant of three counts each of attempted murder and aggravated assault, and one count each of firearms not to be carried without a license, carrying firearms on a public street in Philadelphia, and possession of an instrument of crime. The court imposed an aggregate sentence of 25-50 years' incarceration. This timely appeal follows.

On appeal, Appellant challenges five issues. He first contends the trial court improperly denied his motion to suppress Hall's photo identification. The

---

[1] The trial transcript is not in the certified record. Appellant requested a copy of the transcript in the trial court. For whatever reason, the trial court did not forward the transcript along with the certified record. A copy of the transcript is in Appellant's reproduced record, and the Commonwealth has not objected to that copy. In the interest of judicial economy, we have not requested the trial court to locate and forward the official transcript, *see Commmonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super.2006) (*en banc*), but have elected to use the one provided in the reproduced record. *Accord Commonwealth v. Walls*, 926 A.2d 957, 959 n.1 (Pa. 2007) (relying on pre-sentence investigation report that appeared only in reproduced record where neither party challenged the validity of the report).

police, Appellant argues, were unnecessarily suggestive in presenting Hall with the photo array by implying that he had to choose one of the images before him, rather than giving Hall the option not to select a photo if he did not recognize the gunman. We disagree.

When reviewing a denial of a suppression motion, "we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Eichinger***, 915 A.2d 1122, 1134 (Pa. 2007). We are not bound by the suppression court's legal conclusions and review the suppression court's application of the law to the facts *de novo*. ***See Commonwealth v. Myers***, 118 A.3d 1122, 1125 (Pa. Super. 2015).

In contrast, we defer to the suppression court's findings of fact as it is in the bailiwick of the suppression court to assess the credibility of witnesses and the weight to be given to their testimony. ***See id***. "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted).

"Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances." ***Commonwealth v. Fulmore***, 25 A.3d 340, 346 (Pa. Super. 2011) (citation omitted). Identification evidence will not be suppressed,

except in cases where "the identification procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." **Commonwealth v. Stiles**, 143 A.3d 968, 978 (Pa. Super. 2016) (citation omitted). "Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion." **Fulmore**, 25 A.3d at 346. (internal quotation marks and citation omitted). Suggestiveness occurs in an identification procedure where the police emphasize or otherwise isolate a suspect. **See Commonwealth v. Davis**, 17 A.3d 390, 394 (Pa. Super. 2011).

Appellant's argument is misleading at best. Hall told police officers that he knew "Bam" (Appellant's nickname) was the shooter. Hall's decision not to cooperate at trial notwithstanding, Appellant cannot fairly maintain that the police procedures used here created a "substantial likelihood of misidentification." The police culled a list from their database, using Hall's description of Appellant, a person Hall knew. They produced pictures of seven other people in conjunction with Appellant's picture—all men in their 20s with close-cropped dreadlocks and similar skin tones and features. Appellant does not suggest, nor does the record show, that the police asked Appellant to do anything more than "identify the shooter." N.T. Suppression Hearing, 10/5/15, at 9.

Again, Appellant was someone Hall knew as "Bam" prior to the both shootings. We find nothing in the record to support Appellant's assertions that

- 4 -

the trial court erred by not suppressing the photo identification, and we decline to reverse on those grounds.

In Appellant's second issue, he challenges the trial court's conduct during the *voir dire* jury selection process. Specifically, Appellant contends the court erred by not allowing him to conduct individual questioning of jurors to elicit evidence of potential racial bias.

"[T]he purpose of voir dire is to ensure the empaneling of a fair and impartial jury capable of following the instructions on the law as provided by the trial court." ***Commonwealth v. Paolello***, 665 A.2d 439, 450 (Pa. 1995) (citation omitted). "[T]he test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence. This determination is to be made by the trial judge based on the juror's answers and demeanor and will not be reversed absent a palpable abuse of discretion." ***Commonwealth v. Penn***, 132 A.3d 498, 502 (Pa. Super. 2016).

"*Voir dire* is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies." ***Paolello***, 665 A.2d at 451 (holding that counsel was not permitted to question jurors during *voir dire* about their attitudes toward alcohol in case where victim's death involved alcohol consumption). The trial court has discretion in determining whether counsel may pose separate questions to potential jurors during *voir dire*. ***See Commonwealth v. Mattison***, 82 A.3d 386, 397 (Pa. 2013) (citation omitted) (holding trial court did not abuse its discretion when it precluded defense

counsel's proposed questions to jury venire about defendant's prior murder conviction). Indeed, despite counsel's request, the court may decline to ask *voir dire* questions on race where particularly sensitive racial issues are not present, and raising such issues risks unnecessarily injecting race into the proceedings. **See Commonwealth v. Richardson**, 473 A.2d 1361, 1363 (Pa. 1984). **See also Commonwealth v. Glaspy**, 616 A.2d 1359, 1362 (Pa. 1992) (describing point at which racial considerations were introduced into the case and it became appropriate for the trial court to individually question potential jurors on prejudices they may have held).

The trial court here did not allow Appellant to ask additional questions about jurors' possible bias regarding statements made by police officers. However, this was *after* the court had asked jurors whether they could be fair and open-minded, and after it already informed jurors they may not give a police officer's testimony any additional weight simply because of the officer's status as a law enforcement agent. Any jurors who indicated on their individual questionnaire that they would give an officer's testimony more weight were individually questioned in order for the court to ascertain whether they could follow the court's instructions with respect to law enforcement testimony. Each juror answered in the affirmative. To the extent Appellant challenges these questions as "cursory, superficial, [and] leading," we decline to find that the court erred in this line of questioning.

Counsel also avers the trial court erred by not permitting trial counsel to question potential jurors during *voir dire* about their views on guns and gun

violence, or on their racial attitudes. Counsel's own explanation as to why he wanted to ask those questions demonstrates his intent to use this line of reasoning as a framing device for Appellant's case.

Counsel advanced no reason as to why the case might be racially sensitive, but instead baldly stated: "[T]here's nothing [in the questionnaire] about the current situation that young African American men are constantly in the media talking about guns in – particular guns and shootings and could that possibly impact the prejudice in any way that this case involves a young African American male accused of shooting and having a gun." N.T. Jury Selection, 10/7/15, at 43-44.

*Voir dire* is not an appropriate opportunity for counsel to assess the value of particular trial strategies. **See Paolello**, 665 A.2d at 451. The trial court acted well within its discretion in not permitting counsel to individually question jurors about their racial attitudes or views on firearms. Thus, we find the court did not err when it refused to permit defense counsel's proposed line of questioning.

In Appellant's third issue, he claims the Commonwealth improperly bolstered Kaleem Shelton's testimony by noting the Commonwealth prosecuted Shelton for his role in the crimes, and the same court presided over Shelton's guilty plea hearing. We disagree.

The trial court has discretion over the admissibility of evidence, and its decision will not be disturbed unless it abuses that discretion. **Commonwealth v. Lam**, 684 A.2d 153, 158 (Pa. Super. 1996). "Improper

bolstering of a witness occurs when the Commonwealth places the prestige of the government behind the witness through personal assurances of his or her veracity, or the Commonwealth indicates that information which is not before the jury supports the witness' testimony." *Id*. (citations omitted). The Commonwealth may introduce evidence of a witness' plea agreement in testimony at trial. *See Commonwealth v. Bricker*, 581 A.2d 147, 155 (Pa. 1990).

There is no merit in Appellant's third issue. The Commonwealth noted while reading the transcript of Shelton's prior police statement that it had charged Shelton for his participation in the crimes at issue in this case, and Shelton pled guilty. The Commonwealth indicated that the same court presiding over Appellant's case accepted Shelton's plea. At no point did the Commonwealth place its authority behind Shelton's statement, or otherwise bolster Shelton's credibility. Counsel for the Commonwealth did not personally assure jurors that Shelton was a truthful witness, nor did counsel imply the court was convinced of Shelton's truthfulness. Indeed, the Commonwealth clearly and carefully emphasized that Shelton was also a participant in the crimes, and that he had been sentenced to time in prison for his role. Introducing evidence of Shelton's own criminal responsibility for actions in this case does not constitute improper bolstering. Appellant is due no relief on this issue.

In Appellant's fourth issue, he claims the trial court erred by admitting hearsay when it permitted the Commonwealth to read into evidence Raquane

Hall's out-of-court statement to his brother, Rakeem Hall. We find this issue waived.

Pennsylvania Rule of Evidence 103(a) provides that a party may claim error in the admission of evidence only if he makes a timely objection on the record and states the specific ground for the objection, unless it was apparent from the context. **See** Pa.R.E. 103(a)(1)(A)-(B). "We have long held that '[f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal.'" **Commonwealth v. Tha**, 64 A.3d 704, 713 (Pa. Super. 2013) (citing, among others, Pa.R.A.P. 302(a).

At trial, the Commonwealth read portions of Rakeem Hall's prior police statement into evidence after he refused to cooperate. **See** N.T. Trial, 10/8/15, at 25-61. The Commonwealth also introduced sections of the statement where Rakeem Hall recounted a conversation with his girlfriend's uncle, as well as text messages between Hall and his girlfriend. **See id**., at 32, 36. Rakeem Hall's statement included an allegation from his brother Raquane, in which Raquane described who shot him and Rakeem concluded that the person described was Appellant. **See id**., at 59-60. While Appellant's counsel specifically objected to the introduction of the statement between Rakeem Hall and his girlfriend's uncle, and to the text messages, he failed to object to the declaration Raquane allegedly relayed to Rakeem over the phone, which Rakeem memorialized in his police statement.

The court gave Appellant's counsel an opportunity to clarify his objections before cross-examination, and counsel again stated his belief that

the text messages and the conversation between Rakeem and his girlfriend's uncle was inadmissible. *See id*., at 66-69. The court denied this objection, and Appellant specifically does not raise this issue on appeal. *See* Appellant's Brief, at 42. Appellant did not raise a specific and timely objection to the introduction of the testimony regarding what Raquane Hall said to Rakeem about the person who shot him. As Appellant failed to specifically object to this testimony, the issue is not preserved for appellate review.

Appellant's final issue challenges the trial court's alleged limitations on his cross-examination of Commonwealth witnesses, and the admission of Kaleem Shelton's written statement to police.

The trial court has broad discretion in determining the scope and limits of cross-examination, and the court's decision will not be reversed unless it clearly abused that discretion. *See Commonwealth v. Briggs*, 12 A.3d 291, 335 (Pa. 2011). "Although the right of cross-examination is a fundamental right, it is not absolute." *Commonwealth v. Rosser*, 135 A.3d 1077, 1088 (Pa. Super. 2016) (citation omitted). The right of confrontation does not permit fishing expeditions. *See id*. "On cross-examination, counsel may question the witness concerning subjects raised during direct examination, may refute inferences raised during direct testimony, and may attempt to discredit a witness through questions about acts or omissions inconsistent with his testimony." *Commonwealth v. Robinson*, 877 A.2d 433, 449 (Pa. 2005) (citation omitted).

- 10 -

"[T]he admission of a prior inconsistent statement of a non-party witness shall be used as substantive evidence only when: (1) the statement was given under oath at a formal legal proceeding; or (2) the statement is reduced to a writing signed and adopted by the declarant; or (3) the statement is recorded verbatim contemporaneously with the making of the statement." **Commonwealth v. Hanible**, 30 A.3d 426, 445 (Pa. 2011) (citation omitted) (holding witness' adoption of statement at trial unnecessary to prove that witness previously signed and adopted statement when made).

During cross-examination of Rakeem Hall, Appellant's counsel asked him about statements Hall's brother Raquane made to police. **See** N.T. Trial, 10/8/15, at 97. Appellant avers this testimony was properly within the scope of cross-examination, as the Commonwealth had previously elicited testimony that Raquane told Rakeem Appellant had shot him. However, Rakeem's statement to police, which the Commonwealth partially read into the record on direct, concerned what Raquane *directly* related to Rakeem, not what Raquane told the police. Neither the Commonwealth nor Appellant presented any evidence that Rakeem was present during, or had direct knowledge of, Raquane's interview with police. Thus, the court properly sustained the Commonwealth's objection to Appellant's counsel's question.

Appellant also objects to the court's limitation of his cross-examination of Kaleem Shelton. Appellant contends that this limitation restricted him from eliciting information that could have allowed the jury to more fully evaluate Shelton's credibility.

- 11 -

Appellant's counsel questioned Shelton at length about Shelton's purported reading comprehension issues, in order to undermine the veracity of Shelton's signed statement, which a police officer transcribed by hand. **See** N.T. Trial, 10/9/15, at 60-66. Counsel then asked Detective Wolkowicz, who had taken Shelton's statement, about Shelton's ability to understand him. Notably, counsel did not ask the detective if he believed Shelton understood him; instead, counsel asked Detective Wolkowicz how Shelton "would know the difference between what you're reading to him and what you're saying to him[.]" *Id*., at 102. This question called for the detective to speculate as to what *Shelton* may have understood, which not a fact the detective could properly testify to. The trial court did not err in sustaining the Commonwealth's objection.

To the extent Appellant asserts that Shelton's statement should have been excluded from evidence because of Shelton's purported lack of ability to understand it, this argument is also baseless. Shelton testified he signed the document. **See id**., at 43. On direct examination, Detective Wolkowicz testified he read the statement to Shelton line-by-line, and that Shelton agreed with each line before signing the statement at the end of the document. *Id* at 78. Appellant's argument that Shelton did not understand what the detective wrote was thus properly submitted as argument for the fact-finder to consider, rather than as a reason to preclude Shelton's prior inconsistent statement from evidence altogether.

Judgment of sentence affirmed.

Judge Dubow joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2017