J-A22030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY MARTIN JAMISON | : | |
| | : | |
| Appellant | : | No. 1458 WDA 2023 |

Appeal from the Judgment of Sentence Entered November 30, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0001405-2021

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:　　　　　　**FILED: January 8, 2025**

Anthony Martin Jamison appeals from the judgment of sentence imposed following his convictions for possession of a controlled substance with intent to deliver ("PWID"), two counts of possession of a controlled substance, and tampering with or fabricating physical evidence.[1] Jamison challenges the trial court's refusal to question jurors about racial prejudice; the sufficiency of the evidence to prove PWID; the admission of evidence from his Waze app; and the court's application of the sentencing guidelines. We affirm.

At Jamison's jury trial, Detective Shane Rebel testified that, acting undercover, he arranged by telephone to buy 11 bricks of heroin and two grams of cocaine from Jamison. Trial Court Opinion, filed 3/14/24, at 11. When Jamison arrived at the meeting spot – the Hampton Inn in North Huntingdon

_____

[1] *See* 35 P.S. § 780-113(a)(30) and (a)(16), and 18 Pa.C.S.A. § 4910(1), respectively.

– Detective Rebel observed him from an unmarked police vehicle. Detective Rebel then sent a message to Jamison, asking him to meet for the exchange at the Hampton Inn in Greensburg, instead. *Id.* at 12. Rebel followed Jamison as he drove towards Greensburg, stopping at a Sheetz gas station. Once Jamison started driving again, Detective Rebel instructed another officer, Scott Urias, to stop Jamison. *Id.* at 12-13.

During the stop, Jamison ran from the police. *Id.* at 13. Officer Urias testified that as Jamison ran, he threw a plastic bag. *Id.* at 17. After Jamison was arrested, Officer Urias and Officer Jay Kettren retrieved the bag and found it contained what appeared to be bricks of heroin and a bag of crack cocaine. *Id.* at 17, 18. Detective Rebel determined the bag held approximately 540 stamp bags of heroin and one bag of cocaine. *Id.* at 14. Detective Rebel also recovered $1,305 from Jamison's pocket. *Id.* at 13.

Detective Rebel obtained a search warrant for Jamison's vehicle and found two cell phones.[2] He then obtained a search warrant for their contents. Detective Rebel was only able to retrieve information from one of the phones. He gave the phone to Officer Tom Klawinski, a digital forensic examiner, to extract the digital contents of the phone. *Id.* at 15. Officer Klawinski testified that he extracted the data from the phone for Detective Rebel. *Id.* at 21-22; *see also* N.T., Trial, 9/11/23-9/13/23, at 280-84. Detective Rebel testified that the data showed the phone had the number which he had used to arrange

_____

[2] Detective Rebel found a third cell phone which appeared inoperable.

the controlled buy with Jamison. *See* Trial Ct. Op. at 15; N.T. at 334. He also testified that the Waze navigational app on the phone showed searches for the addresses of the Hampton Inn in North Huntingdon and the Hampton Inn in Greensburg, just prior to the arrest. *See* Trial Ct. Op. at 15-16; N.T. 332-33, 335-36. There was also location data for the Sheetz. *See* Trial Ct. Op. at 16; N.T. at 336. The phone also contained a picture of the key for the rental vehicle, which Detective Rebel discovered had been rented by Jamison's girlfriend, and her address. *See* Trial Ct. Op. at 14-15; N.T. at 333-34.

The Commonwealth presented the expert testimony of a forensic scientist, Alyshia Meyers, who tested the drugs found in Jamison's bag. She testified that she tested the items in four groups. First, she tested the contents of 14 of the 488 stamp bags that displayed a "Pop Smoke" stamp. The results of the testing, of which Meyers was 95% confident, showed that at least 80% of those bags contained 16 grams (plus or minus 3 grams) of a mixture of heroin, acetyl fentanyl, fentanyl, and tramadol. Trial Ct. Op. at 23-24. Second, Meyers tested one of three unmarked stamp bags, which she concluded contained 0.043 grams of a similar mixture. *Id.* at 24-25. Third, she tested one of the 50 stamp bags with a "WS" and purple diamond stamp and concluded they also contained a mixture of heroin, fentanyl, and tramadol. *Id.* at 25. Finally, she tested a Ziploc bag that she found contained approximately 1.95 grams of cocaine. *Id.* Meyers explained she uses statistical modeling to extrapolate her estimates using a limited number of samples. *Id.* at 23; N.T. at 230, 267-68.

Detective Tony Marcocci, an expert in the field of narcotics and narcotics investigation, also testified. N.T. at 395; Trial Ct. Op. at 26. He offered an opinion that the heroin/fentanyl was possessed with intent to distribute it. N.T. at 419. He discussed the factors he considers when determining whether a person had the intent to distribute the narcotics found in the person's possession. Trial Ct. Op. at 26. In this case, he considered the lack of paraphernalia, the large amount of cash Jamison had on hand, the multiple cell phones, and the use of a rental car to be indicators that Jamison intended to deliver the narcotics recovered by the police. *Id.* at 26-27 (citing N.T. at 402-03, 412, 414, 416). Detective Marcocci also found that the fact the vehicle had been rented by a third party was indicative of drug dealing, as was the packaging of the drugs. *See* N.T. at 416, 419. Detective Marcocci testified that the weight of the narcotics recovered in this case was consistent with an intent to deliver. Trial Ct. Op. at 27 (citing N.T. at 407, 411); *see also* N.T. at 419, 441-42. He testified that if a person possessed only 20 bags of heroin, rather than 541, he would be less likely to conclude from that fact alone that the person had the intent to deliver the drugs. N.T. at 437-38. However, Detective Marcocci testified that even in that circumstance, the presence of the other factors present in this case would still lead him to conclude that the person had an intent to deliver. *Id.* at 442-44.

Following trial, the jury convicted Jamison of the above offenses.[3] The court sentenced him to an aggregate of five to 10 years' incarceration and one year of probation. Jamison appealed.[4]

Jamison raises the following issues:

I. WHETHER THE COURT ERRED BY NOT ALLOWING POTENTIAL JURORS TO BE QUESTIONED CONCERNING THEIR PREJU[D]ICE AND BIAS TOWARD A YOUNG BLACK MALE CHARGED WITH SELLING DRUGS IN AN AFFLUENT PRIMARILY WHITE COMMUNITY?

II. WHETHER THE COMMONWEALTH FAILED TO [PRESENT] SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT [JAMISON] POSSESSED 541 STAMP BAGS, EACH CONTAINING A CONTROLLED SUBSTANCE?

III. WHETHER THE COMMONWEALTH FAILED TO PRESENT [SUFFICIENT] EXPERT OPINION TESTIMONY THAT [JAMISON] POSSESSED 541 STAMP BAGS, EACH CONTAINING [A] CONTROLLED SUBSTANCE WITH THE INTENT TO DELIVER THAT CONTROLLED SUBSTANCE?

---

[3] The court, sitting as fact-finder, acquitted Jamison of two motor vehicle violations: driving while operating privilege is suspended or revoked, and turning movements and required signals. **See** 75 Pa.C.S.A. §§ 1543(a), 3334(b), respectively.

[4] Jamison failed to file a timely Rule 1925(b) statement. However, the court, finding defense counsel had not received the order to file a statement, granted Jamison additional time to file his statement. Jamison filed a Rule 1925(b) statement by the new deadline. Therefore, we will not find waiver. **See Commonwealth v. Gonzalez**, 840 A.2d 326, 328 (Pa.Super. 2003) (*en banc*) ("if neither [the a]ppellant nor his counsel were served with the order directing [the a]ppellant to file a 1925 statement, then [the a]ppellant cannot be deemed to have been 'ordered' to file such a statement and the failure to do so cannot then be a basis for finding waiver"); **Commonwealth v. Douglas**, 835 A.2d 742, 745 (Pa.Super. 2003) ("waiver may be excused if an appellant can demonstrate that he/she never received proper notice of the trial court's Pa.R.A.P. 1925(b) order").

IV. WHETHER THE COURT ERRED IN ALLOWING RECORDS FROM A "WAZE APP" ON THE PHONE SEIZED FROM THE CAR [JAMISON] WAS DRIVING TO BE INTRODUCED AT TRIAL WITH NO EXPERT TESTIMONY AND/OR TESTIMONY FROM AN APPROPRIATE WAZE EMPLOYEE TO ESTABLISH THE TRUTH, ACCURACY AND RELIABILITY OF THAT INFORMATION?

V. WHETHER THE COURT ERRED IN ADMITTING HEARSAY RECORDS FROM THE "WAZE APP" THAT WAS ON A PHONE SEIZED FROM THE CAR [JAMISON] WAS DRIVING?

VI. WHETHER THE COURT ERRED IN APPLYING THE FENT[A]NYL SENTENCING GUIDELINES WHEN THE COMMONWEALTH FAILED TO PRODUCE ANY EVIDENCE THAT [JAMISON] KNEW HE POSSESSED FENTANYL?

Jamison's Br. at vii-viii (suggested answers omitted).

## I. *Voir Dire*

Jamison first argues the court erred in denying his request to ask the potential jurors whether his being black would make them more likely to believe that he was involved in criminal activity. Jamison's counsel asked the court if he could "ask every juror, because of my client's race, if they believe it was more likely that he was involved in either the drug trade, drug activity, or crime in general." *Id.* at 4. Jamison asserts his case "is very racially sensitive" because it "involves a young black male accused of drug dealing in an affluent white community[.]" *Id.* at 3. He argues the court's catchall question, asking if there is any reason the jurors could not be fair, was not sufficient to determine whether the jurors were racially prejudiced. In his view, "it is fallacy to believe a juror is going to self-report that they hold a prejudice against a young black male[.]" *Id.* at 4. He argues that if the court had asked at least one direct question about race, the juror[s'] answers could potentially

have led to follow-up questions "which allow jurors' true feelings about race to be determined." *Id.* He cites **Commonwealth v. Richardson**, 473 A.2d 1361 (Pa. 1984), in support.

The court denied the request, finding Jamison's proposed *voir dire* question "would have injected race into a case without any evidence implicating race, which may have interfered with the balance of an impartial trial and suggested prejudicial implications." Trial Ct. Op. at 34. It noted that while Jamison's counsel referenced his race in his opening and closing statements, "none of the evidence submitted had any focus on race, other than officers testifying that [Jamison] was a 'black male' for identification purposes." *Id.* The Court also found it sufficiently probed into any potential bias by asking the jury members whether they "had any personal, moral, or religious beliefs relating to controlled substances that would prevent them from being a fair and impartial juror in the case," and "whether there was any reason they could not be a fair juror in a criminal case or in this case." *Id.*

The scope of *voir dire* rests within the discretion of the trial court, and we will not reverse the court's decisions in his regard absent a palpable abuse of discretion. **Commonwealth v. Mattison**, 82 A.3d 386, 397 (Pa. 2013).

The purpose of *voir dire* is to aid the empaneling of a "competent, fair, impartial, and unprejudiced jury[.]" **Commonwealth v. Holt**, 273 A.3d 514, 546 (Pa. 2022) (citation omitted). *Voir dire* questions are limited to discerning whether a potential juror has an opinion regarding the defendant's guilt or innocence that is "so deeply embedded as to render that person incapable of

accepting and applying the law as given by the court." ***Commonwealth v. Scott***, 212 A.3d 1094, 1103 (Pa.Super. 2019) (citation omitted). This inquiry must be "considered in light of the factual circumstances of a particular criminal episode." ***Holt***, 273 A.3d at 546 (citation omitted).

In ***Richardson***, the defendant was a black man charged with raping a white woman. The trial court denied his request to question the potential jurors on specific racial biases, including whether they believed black people were more dishonest than white people and whether black men were more likely to rape white women. Instead, the court asked the potential jurors whether the racial differences between the defendant and the victim "present such a problem to you that it could interfere with your honest appraisal of the case and interfere with your ability to be completely fair to both the Commonwealth and the [d]efendant?" 473 A.2d at 1362.

The Pennsylvania Supreme Court found that the trial court had properly declined defendant's request. It noted that while inquiring into the racial attitudes of potential jurors might be warranted in a racially sensitive case, "[a] criminal prosecution is not . . . rendered racially sensitive by the mere fact that the defendant is black and the crime victim is white." ***Id.*** at 1363 (emphasis removed). The Court found that the racial difference between the defendant and victim were not emphasized by the trial evidence. It concluded that if the trial court had posed the questions requested by the defense, this "would have risked creating racial issues in a case where such issues would not otherwise have existed," "thereby beclouding the trial with prejudicial

suggestions and implications." *Id.* at 1364. The Court held the question the trial court asked the potential jurors instead was "sufficiently specific and probing to reveal prejudices which might have bearing upon the case." *Id.*

Pursuant to *Richardson*, Jamison has not shown that the case was racially sensitive. Under the facts of the case and the holding of *Richardson*, the trial court's decision was not an abuse of discretion. *See Commonwealth v. Wimbush*, 951 A.2d 379, 383 (Pa.Super. 2008) (stating, "Absent a demonstration of special circumstances, other than the race of a defendant, *voir dire* into the racial bias of prospective jurors is not required to ensure a defendant a fair trial").

## II. Sufficiency of the Evidence

Jamison's next two issues are interrelated. First, he argues there was insufficient evidence to convict him of PWID because the Commonwealth only presented evidence that it tested a small portion of the large collection of stamp bags it recovered from Jamison. He points out that the forensic scientist estimated that 80% of the stamp bags contained a controlled substance. He therefore claims that "the Commonwealth presented no evidence that 20% . . . of the stamp bags contained a controlled substance." Jamison's Br. at 5. He also notes she gave her results with a confidence of 95%, and argues that "a 5% chance is the very definition of reasonable doubt." *Id.* at 6.

Jamison then argues that because the Commonwealth only proved some of the stamps bags contained a controlled substance, this invalidated Detective Marcocci's opinion that, based on the total quantity of 541 stamp

bags, Jamison intended to deliver them. Jamison asserts that the Commonwealth failed to present testimony that an expert could extrapolate an intent to deliver from a lesser amount of controlled substance.

We review a sufficiency claim pursuant to the following standard:

When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. This standard applies equally where the Commonwealth's evidence is circumstantial.

In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a reasonable doubt. The fact-finder is free to believe all, part, or none of the evidence.

*Commonwealth v. Clemens*, 242 A.3d 659, 664-65 (Pa.Super. 2020) (cleaned up).

Jamison's first argument has no merit. The Commonwealth does not need to provide evidence that it tested every bit of a large quantity of a controlled substance to prove beyond reasonable doubt that the entire lot was the same substance. An expert opinion of the total drugs possessed based on extrapolation from testing of a subset of the evidence can be sufficient evidence in a criminal case. *Commonwealth v. Harley*, 924 A.2d 1273, 1280 (Pa.Super. 2007). "It is well-settled that '[t]he practice of testing representative samples of larger quantities of drugs and extrapolating

therefrom the total narcotics content of an illegal substance is well accepted.'" *Id.* (quoting *Commonwealth v. Minott*, 577 A.2d 928, 931 (Pa.Super. 1990)). In fact, the Commonwealth may identify a narcotic substance through circumstantial evidence alone, without any chemical testing. *Minott*, 577 A.2d at 932. Here, the Commonwealth presented sufficient evidence to establish that all the bags they recovered from Jamison contained narcotics, based on the results of the chemical test Meyers performed on a representative sample.

Jamison's second argument fails as well. "[T]he intent to deliver may be inferred from possession of a large quantity of controlled substances." *Commonwealth v. Roberts*, 133 A.3d 759, 768 (Pa.Super. 2016) (citation omitted). Here, Detective Marcocci testified as an expert that Jamison possessed a large enough quantity of narcotics to support the inference that he intended to deliver them. This was sufficient evidence to establish PWID.

Moreover, "if the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors." *Id.* These include "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, . . . [the] sums of cash found in possession of the defendant . . . [and] expert testimony." *Id.* (citation omitted).

Here, Detective Marcocci testified that even if Jamison had only possessed 20 stamp bags containing narcotics, and not 541, the other factors in the case would support a conclusion that Jamison had the intent to deliver the drugs. Detective Marcocci considered the packaging of the drugs, the lack

- 11 -

of drug paraphernalia, the use of a third-party rental car, the multiple cell phones, and the large amount of cash the police recovered from Jamison. In addition to Detective Marcocci's expert testimony, Detective Rebel testified that he had arranged to buy drugs from Jamison, and Jamison had arrived with the drugs at the meeting spot, as planned. Therefore, even if we found the Commonwealth's evidence regarding the exact quantity of drugs to be lacking, there was sufficient other evidence that Jamison committed PWID.

### III. Waze App Evidence

Jamison's fourth and fifth issues challenge the admissibility of the data from the Waze navigational app that the police extracted from the phone they found in the car Jamison was driving. Jamison first argues the court erred in overruling his objection to authentication. **See** Jamison's Br. at 8 (citing Pa.R.E. 901). He argues the Commonwealth did not establish how the Waze app works, whether the information is exclusive to any particular user or account, and if it records data in real time. He further argues the Commonwealth failed to establish that the app inputs data correctly and works reliably. Jamison argues that the admission of the unauthenticated evidence was reversible error because the Commonwealth offered the evidence to show that the locations listed in the app corresponded to the places Jamison drove preceding his arrest.

"[D]ecisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." **Commonwealth v. Jackson**, 283 A.3d 814, 817

(Pa.Super. 2022) (citation omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will, as shown by the evidence or the record, discretion is abused." ***Id.*** (citation omitted).

Authentication of evidence is governed by Pennsylvania Rule of Evidence 901. To authenticate digital evidence,[5] its proponent must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This may be done directly by a knowledgeable person or by other, circumstantial evidence. ***Id.***; ***see also Gregury v. Greguras***, 196 A.3d 619, 633 (Pa.Super. 2018) (*en banc*). The Rule further states that the author of digital information can be established by direct testimony, identifying content, or "proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship." Pa.R.E. 901(11). The Rule imposes a "low burden of proof." ***Jackson***, 283 A.3d at 818. A *prima facie* case of authenticity is sufficient for an item to be admissible. ***Greguras***, 196 A.3d at 633-34.

The court found the Commonwealth met its burden to authenticate the digital Waze records. Trial Ct. Op. at 37. The court recalled that Detective Rebel testified he recovered the phone from the car, of which Jamison had

---

[5] Under the Rule, "digital evidence," includes "a communication, statement, or image existing in an electronic medium. This includes emails, text messages, social media postings, and images." Pa.R.E. 901 at comment.

been the only occupant, and gave it to Officer Klawinski. Officer Klawinski testified that he extracted the data and generated a report for Detective Rebel. Detective Rebel testified that the phone's number was the number he had used to contact Jamison to arrange the controlled buy, and the Waze app showed addresses for the locations where Jamison had agreed to meet Detective Rebel, and the gas station where he had stopped in between. The court did not abuse its discretion in holding the Commonwealth presented *prima facie* evidence that the data listed in the Waze app was the result of Jamison's operation of the cell phone and was therefore admissible.

Jamison also argues the court erred in allowing the evidence because he alleges it is hearsay. He argues the evidence was an out-of-court statement that the Commonwealth offered for its truth.

Hearsay is a statement that a declarant makes outside of court and which is offered as proof of the matter asserted. **See** Pa.R.E. 801(c). A declarant is a "person" who makes a statement, and a "statement" is a "person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." **Id.** at 801(a), (b). As it is not asserted by a person, electronic data that is automatically collected or generated, such as GPS data, is not hearsay evidence. **See Commonwealth v. Vance**, 316 A.3d 183, 189 (Pa.Super. 2024).

The court found the Waze data was not hearsay, and we agree. First, the Waze data showing addresses is not hearsay, as it does not consist of statements made by a person, but of automatically generated data. **Id.** The

- 14 -

Waze data also shows searches for addresses, which the Commonwealth alleged were made by Jamison, and the times those searches were made. However, the searches are not hearsay, as they are not assertions offered for their truth. And, even if we construed them as assertions made by Jamison, a defendant's statements are exceptions to prohibition on hearsay. **See Commonwealth v. Edwards**, 903 A.2d 1139, 1157-58 (Pa. 2006); Pa.R.E. 803(25).

## VI. Sentencing Guidelines

Jamison's concluding argument is that the court erred in applying the sentencing guidelines applicable to offenses involving fentanyl because the Commonwealth failed to prove Jamison knew he possessed fentanyl, rather than heroin. He claims that Detective Rebel testified that he had asked to buy heroin and cocaine, and that fentanyl was not implicated in the case until the Commonwealth tested the contents of some of the stamp bags. He contends that applying the guidelines which increased his sentence, without making a finding of criminal intent, subjects him to strict liability in violation of his constitutional right to due process. Jamison's Br. at 10.[6]

Due process requires that any fact, aside from a prior conviction, that increases a mandatory minimum sentence or the statutory maximum for a sentence must be submitted to the fact-finder and proven beyond a

---

[6] Jamison's due process claim goes to the legality of his sentence, and therefore is not waivable. **See generally Commonwealth v. Prinkey**, 277 A.3d 554, 562-63 (Pa. 2022).

reasonable doubt. *See **Commonwealth v. Williams***, 302 A.3d 117, 122 (Pa.Super. 2023) (discussing ***Apprendi v. New Jersey***, 530 U.S. 466 (2000), and ***Alleyne v. United States***, 570 U.S. 99 (2013)), *appeal denied*, 312 A.3d 315 (Pa. 2024). However, facts that merely increase the ranges suggested by the sentencing guidelines need not be submitted to the fact-finder and proven beyond a reasonable doubt, as a sentencing court has discretion to make factual findings relevant to sentencing. ***See id.*** (finding court did not abuse its discretion in using enhanced sentencing guidelines based on weight of fentanyl even though jury had not made finding as to weight).

Here, the jury convicted Jamison of possession of "heroin/fentanyl" with intent to deliver. ***See*** Verdict, 9/14/23, at 1. Even assuming the jury did not expressly find that Jamison knew he possessed fentanyl, rather than only heroin, the court did not err in considering the guidelines ranges corresponding to PWID with fentanyl. The court had discretion to draw its own conclusions from the facts regarding Jamison's level of culpability, and the court's conclusion did not alter the statutory minimum or maximum sentence for the offense.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/08/2025

- 16 -