J-S16011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
WILLIAM M. VELASQUEZ :
:
Appellant : No. 914 MDA 2024

Appeal from the PCRA Order Entered May 29, 2024
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000625-2018

BEFORE: LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: JUNE 24, 2025**

William M. Velasquez appeals from the order, entered in the Court of
Common Pleas of Centre County, denying his petition filed pursuant to the
Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After review,
we affirm on the basis of the well-written May 29, 2024 opinion and order
authored by the Honorable Katherine V. Oliver. **See** PCRA Court Opinion and
Order, 5/29/24, at 1-17.[1]

On March 29, 2019, after a two-day jury trial, Velasquez was convicted
of one count of aggravated indecent assault-person less than 16 years of age[2]

---

[1] In its Pa.R.A.P. 1925(a) opinion, the PCRA court incorporated its May 29,
2024 opinion and order denying Velasquez's PCRA petition. **See** PCRA Court
Opinion, 7/16/24, at 1.

[2] 18 Pa.C.S.A. § 3125(a)(8).

and three counts of indecent assault-person less than 16 years of age[3] for illegal sexual acts he performed on his minor niece, E.B. On July 16, 2019, the trial court sentenced Velasquez to an aggregate term of 26 to 52 years' incarceration.

Velasquez filed a timely notice of appeal and, on July 9, 2021, this Court affirmed his judgment of sentence. *See Commonwealth v. Velasquez*, 260 A.3d 132 (Pa. Super. 2021) (Table). Velasquez did not seek review of this Court's decision until October 22, 2021, when he filed a petition for leave to file a *nunc pro tunc* petition for allowance of appeal. *See* Petition, 10/22/21, at 1-3. On January 27, 2022, our Supreme Court denied Velasquez's petition. *See id.*, 122 MM 2021 (Pa. 2022) (unpublished decision).

On July 11, 2022, Velasquez timely[4] filed the instant counseled PCRA petition, his first, asserting several claims of ineffective assistance of counsel. In particular, Velasquez argued that his trial counsel rendered ineffective assistance by: (1) failing to conduct proper pre-trial investigation into the Children and Youth Services file; (2) falsely identifying Velasquez to the jury

---

[3] *Id.* at § 3126(a)(8).

[4] Velasquez had one year from the date his judgment of sentence became final to file a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1) (any PCRA petition "shall be filed within one year of the date the judgment becomes final"). Notably, Velasquez's petition to file a *nunc pro tunc* petition for allowance of appeal does not apply to our calculation because it was not timely filed and was, importantly, not granted. Consequently, Velasquez's judgment of sentence became final on August 8, 2022, when the time to seek review in our Supreme Court expired. *See id.* at §§ 9543(b)(1), (3). Thus, Velasquez's petition, filed on July 11, 2022, is timely. *See id.*

- 2 -

as Hispanic when he is Puerto Rican, a United States citizen; (3) inartfully phrasing admissions and not zealously advocating for Velasquez; (4) failing to call Joan Patterson, Velasquez's wife, as a witness; and, (5) failing to impeach E.B. with a prior inconsistent statement. *See* PCRA Petition, 7/11/22, at 1-29 (unpaginated). On October 31, 2022, the Commonwealth filed a response and, on November 1, 2022, the Commonwealth filed a motion to dismiss Velasquez's PCRA petition. On December 19, 2022, Velasquez filed a response to the Commonwealth's motion to dismiss.

On April 12, 2023, the PCRA court conducted a hearing. Velasquez testified, as well as Patterson and Andrew Shubin, Esquire, Velasquez's trial counsel. Subsequently, Velasquez and the Commonwealth filed proposed findings of fact and conclusions of law. On May 29, 2024, the PCRA court denied Velasquez's petition.

Velasquez filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Velasquez now raises the following claims for our review:

> 1. Whether the [PCRA] court erred in not finding that trial counsel was ineffective for failing to conduct a proper pre-trial investigation and/or obtain full and complete discovery including **Brady**[5] material from the pertinent CYS files by not obtaining and/or securing these materials?
>
> 2. Whether the [PCRA] court erred in not finding that [] trial counsel was ineffective during voir dire when he identified [Velasquez] as being Hispanic, not being Mexican, and not

---

[5] **Brady v. Maryland**, 373 U.S. 83 (1963).

- 3 -

providing res gestae since he is Puerto Rican and[,] therefore[,] was, at all times relevant hereto, an American citizen no matter where he was born, which provided information includ[ing] reference to trial counsel's own political views, which was irrelevant, incomplete, racist, inflammatory, and prejudicial?

3. Whether the [PCRA] court erred in not finding that trial counsel was ineffective in making numerous judicial admissions during his cross-examination, which conceded the happening of the indecent assaults and were the equivalent of admissions of the guilt of [Valesquez] given the inartful phraseology of his questions, which was the antithesis of zealous advocacy at [Velasquez's] trial?

4. Whether the [PCRA] court erred in not finding that trial counsel was ineffective in failing to [call] Patterson, the only pre-incident, contemporaneously auditory and post-incident witness to the third indecent assault at trial?

5. Whether the [PCRA] court erred in not finding that trial counsel was ineffective in failing to present the best evidence of the prior inconsistent statement (denial) by an admission of the lone minor eyewitness to the first alleged indecent assault in Pennsylvania and to having been influenced by suggestibility of others?

Brief for Appellant, at 4-5 (unnecessary capitalization omitted).

Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations and internal quotation marks omitted).

Velasquez's claims challenge the effectiveness of his trial counsel. Generally, counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the petitioner]." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). Our Supreme Court has

stated that, in order to "merit relief based on an ineffectiveness claim under the PCRA, a petitioner must show that such ineffectiveness[,] in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Collins***, 957 A.2d 237, 244 (Pa. 2008) (quotation and citation omitted).

> To satisfy this burden, [a petitioner] must plead and prove by a preponderance of the evidence that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness[,] there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the [petitioner]'s ineffective assistance of counsel claim.

***Commonwealth v. Holt***, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

Regarding Velasquez's claim that trial counsel was ineffective for failing to call Patterson as a witness, we note that it is well-settled that a PCRA petitioner cannot prevail on a claim of trial counsel's ineffectiveness for failure to call a witness unless the petitioner shows that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Washington***, 927 A.2d 586, 599 (Pa. 2007). To satisfy the prejudice prong of this analysis, a PCRA petitioner "must show how the

- 5 -

uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Commonwealth v. Gibson***, 951 A.2d 1110, 1134 (Pa. 2008) (citations omitted).

Mindful of the record, the applicable standard of review, the relevant case law, and the parties' briefs, we conclude that Velasquez's claims have been comprehensively addressed by Judge Oliver and, thus, we affirm on the basis of the PCRA court's May 29, 2024 opinion and order denying Velasquez's PCRA petition. ***See*** PCRA Court Opinion and Order, 5/29/24, at 1-17. Consequently, we afford Velasquez no relief. The parties are directed to attach a copy of the PCRA court's opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: _6/24/2025_

FILED FOR RECORD
2024 MAY 29 PM 12:21
JEREMY S. BREON
PROTHONOTARY
CENTRE COUNTY, PA

**IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA**
**CRIMINAL ACTION-LAW**

COMMONWEALTH OF PENNSYLVANIA, )
)
)
v. ) No. CP-14-CR-0625-2018
)
WILLIAM M. VELASQUEZ, )
Defendant )

*Attorney for Commonwealth:*                  *Sean P. McGraw, Esq.*
*Attorney for Defendant:*                      *Wayne E. Bradburn, Esq.*

## Opinion and Order

Presently before the Court is Defendant's Post-Conviction Relief Act ("PCRA") Petition. A hearing was held on April 12, 2023. The record was transcribed, and the parties thereafter filed post-hearing submissions. On consideration of the evidence and arguments of the parties, for the reasons set forth below, the Court concludes Defendant is not entitled to PCRA relief.

### I.     Brief Background

On March 29, 2019, following a two-day day trial, William M. Velasquez ("Defendant") was convicted by a jury of one count of Aggravated Indecent Assault/Person Less Than 16 Years of Age, 18 Pa.C.S.A. § 3125(a)(8) and three counts of Indecent Assault Person Less Than 16 Years of Age, 18 Pa.C.S.A. § 3126(a)(8). A verdict of not guilty was returned as to two charges of Unlawful Contact or Communication with a Minor, 18 Pa.C.S.A. § 6318(a)(1). On July 16, 2019, Defendant was sentenced to not less than twenty six years and not more than fifty two years to be served in a State Correctional Institution.

In his PCRA Petition, Defendant asserts he is entitled to relief under 42 Pa.C.S.A §9543(2)(i), (ii) and (iii). In his proposed Findings of Fact and Conclusions of Law and accompanying brief[1] (hereinafter "Defendant's Post Hearing Submission"), Defendant limits his arguments to claims of ineffective assistance of counsel under 42 Pa.C.S.A. § 9543(2)(ii). To that end, Defendant alleges multiple instances of ineffective assistance of his trial counsel which he claims so undermined the truth determining process that no reliable adjudication of guilt or

---

[1] Although Defendant does not label the argument portion of his post hearing submission separately, the Court considers this portion to be a brief and, thus, refers to it as such.

O ☐ RD ☐ S



innocence could have taken place. Defendant requests that the underlying judgment be reversed, that his judgment of sentence be vacated, and that he be awarded a new trial.

The Commonwealth filed a Response to Defendant's PCRA Petition, as well as a motion to dismiss certain of the PCRA claims without a hearing. The Court denied the Commonwealth's motion to dismiss by Order dated February 13, 2023. The Court thereafter conducted proceedings related to Defendant's request for production of third party records from Centre County Children and Youth Services ("CYS") regarding CYS's investigation of certain allegations underlying the criminal case. After an *in camera review*, pursuant to an Order entered April 10, 2013, redacted portions of the CYS records were produced to the parties.

A PCRA hearing was held on April 12, 2023. Andrew Shubin, Esq., ("Trial Counsel"), Joan Patterson, and Defendant testified at the PCRA hearing.

## II.    Applicable Standards

A defendant may be eligible for relief under the PCRA if his conviction or sentence resulted from "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. §9543(2)(ii). Counsel is presumed to be effective. *Commonwealth v. Collins*, 545 A.2d 882, 885 (Pa. 1988). To obtain relief on a claim that counsel was ineffective under the PCRA, a defendant must overcome the presumption of competence and show that counsel's performance was deficient and resulted in prejudice to the defendant. *See Commonwealth v. Dennis*, 17 A.3d 297, 301 (Pa. 2011) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). In Pennsylvania, this requires a defendant to demonstrate: "(1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error." *Id.* (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). Our appellate courts have defined a "reasonable probability" in this context as "a probability sufficient to undermine confidence in the outcome." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1044 (Pa. Super. 2019) (quoting *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013)).

The first prong of the ineffective assistance of counsel test questions whether the asserted claim is of arguable merit because "counsel cannot be considered ineffective for failing to assert a meritless claim." *Commonwealth v. Durst*, 559 A.2d 504, 505 (Pa. 1989). Arguable merit

2

exists when the factual statements, "if accurate, could establish cause for relief." *Stewart*, 84 A.3d at 707.

The second prong concerns whether counsel's conduct lacked a reasonable basis. In deciding whether counsel acted reasonably, the question is not whether counsel could have pursued more logical, other courses of action; rather, the question is whether counsel's actions or inactions have any reasonable basis. *See Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015). "Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success *substantially greater* than the course actually pursued." *Commonwealth v. Spotz*, 84 A.3d 294, 311–12 (Pa. 2014) (internal citations omitted) (emphasis added). A court will not find counsel to be ineffective if counsel's particular action has "some reasonable basis designed to effectuate his client's interest," and "was not the result of sloth or ignorance of available alternatives." *See Commonwealth v. Rivera*, 773 A.2d 131, 140 (Pa. 2001); *Collins*, 545 A.2d at 886. Trial counsel will be determined to be effective "if any reasonable basis for his or her actions is apparent from the record." *Commonwealth v. Hancharik*, 633 A.2d 1074, 1079 (Pa. 1993); *see also Commonwealth v. Washington*, 927 A.2d 586, 606 (Pa. 2007); *Commonwealth v. Twiggs*, 331 A.2d 440, 443 (Pa. 1975). A defendant's failure to provide an evidentiary basis on which to find unreasonableness in trial counsel's alleged ineffectiveness will result in rejection of that ineffectiveness claim. *See Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 783-4 (Pa. Super. 2015) (holding the defendant failed to satisfy the reasonable basis prong where the record did not establish trial counsel's basis for not requesting a jury instruction); *see also Commonwealth v. Koehler*, 36 A.3d 121, 146 (Pa. 2012) (holding the defendant failed to demonstrate that trial counsel lacked a reasonable basis where the defendant had an opportunity to question trial counsel about his strategy at the PCRA hearing but failed to do so).

The third prong of the ineffective assistance test examines whether counsel's error caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). When evaluating allegations of prejudice, the question is whether there exists "a reasonable probability that the result of the proceeding would have been different" but for counsel's error. *Commonwealth v. Robinson*, 82 A.3d 998, 1005 (Pa. 2013).

Counsel is presumed to be effective, and it is the defendant's burden to prove each prong of the test for ineffectiveness by a preponderance of the evidence. *See Collins*, 545 A.2d at 886. "A failure to satisfy *any* prong . . . will require rejection of the claim." *Commonwealth v. Martin*, 5 A.3d 177, 182-3 (Pa. 2010) (emphasis added); *Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002). The Court is not required to analyze the ineffective assistance of counsel test prongs in any particular order; "if a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first." *Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014).

### III.    Defendant's Claims

In the present case, Defendant claims his convictions and resulting sentences are the direct result of Trial Counsel's ineffective assistance in various particulars. Specifically, Defendant makes seven claims of ineffective assistance of counsel, alleging Trial Counsel was ineffective by: (1) failing to conduct a proper pre-trial investigation and/or obtain full and complete discovery from pertinent CYS files; (2) making inappropriate comments regarding Defendant's ethnicity during *voir dire*; (3) making inappropriate comments regarding Trial Counsel's own ability to be impartial during *voir dire*; (4) asking leading questions on cross-examination of the victim that purportedly confirmed that the assaults had occurred; (5) failing to call Defendant's wife, Joan Patterson, as a witness at trial; (6) failing to present "best evidence" of prior inconsistent statements of the lone minor eye witness; and (7) improperly bolstering the credibility of certain Commonwealth witnesses during closing argument. Each of these claims is addressed below.

### IV.    Analysis

#### A. *Failure to conduct a proper pre-trial investigation and/or obtain full and complete discovery from the pertinent CYS files*

Defendant first claims that Trial Counsel performed an inadequate or deficient pre-trial investigation when he failed to secure full and complete discovery.[2] Specifically, Defendant claims Trial Counsel did not fulfill his duty to undertake a reasonable investigation when he

---

[2] Although Defendant devotes multiple paragraphs of his Post Hearing Submission to a discussion of Pa.R.Crim.P. 573 and *Brady v. Maryland*, 373 U.S. 83 (1963), Defendant expressly states he is not pursuing a PCRA claim based on an alleged discovery violation by the Commonwealth. (*See* Def.'s Post Hr'g. Subm., at unnumbered pp. 16-18). Indeed, the record would not support such a claim in any event. Neither Defendant nor the Commonwealth had the CYS records at issue nor were they in the Commonwealth's control.

4

failed to secure CYS files pertaining to an investigation CYS conducted as part of determining whether certain of the abuse allegations at issue were within CYS jurisdiction under the Child Protective Services Law.[3] (*See* Def.'s Post Hr'g. Subm., at unnumbered pp. 20-22). Defendant argues the CYS files contained exculpatory material and inconsistent statements that could have been used to impeach Commonwealth witnesses. (*See id.*, at unnumbered p. 20, ¶ 1).

Defendant's primary argument concerns an ostensibly inconsistent statement made by the victim, E.B., during a CYS interview in which she stated that Defendant would stop assaulting her if a third party was in close proximity. (*See id.*).[4] Specifically, Defendant relies on the following statement as reported in the CYS records to support his claim: "[E.B.] said that if someone got close to them he would stop because he didn't want to get caught." (*Id.*, at unnumbered pp. 5, 20-22; Pet. Exh. 1, at p. 6). Defendant claims this statement could have been used to impeach the victim and the victim's younger sister, M.B., because the victim's sister was in close proximity to Defendant and the victim during a portion of one of the alleged assaults, and Defendant's wife was in close proximity to Defendant and the victim for another incident. (*See id.*, at unnumbered pp. 20-22). Defendant also points to a statement attributed to an interview with E.B.'s mother to the effect that when she spoke with E.B. about the incidents after they initially came to light, she had to ask questions because E.B. was not sure she could come right out and say things, and a statement by M.B. that her mother told her Defendant was hurting other girls and had done inappropriate things to E.B. (*See id.*, at unnumbered pp. 5, 20).

Defendant argues Trial Counsel's failure to secure the CYS files meets all three prongs of the test for ineffectiveness, as the claim has arguable merit, there was no reasonable basis for Trial Counsel's inaction, and the outcome of the trial would have been different had the statements contained in the CYS file been offered at trial. (*See id.* at unnumbered p. 22, ¶ 11).

The Commonwealth concedes, and the Court agrees, that there is arguable merit to the claim that defense counsel should have attempted to procure the CYS files as possibly containing statements of witnesses, including the minor victim, about the alleged incidents giving rise to the charges. There can be no legitimate dispute that defense counsel has a duty to reasonably investigate in representing a criminal defendant. *See Commonwealth v. Johnson*, 966 A.2d 523,

---

[3] After preliminary investigation, CYS concluded the allegations did not give rise to a claim within CYS jurisdiction.

[4] The statement at issue is actually that of a CYS worker reporting on an interview with E.B.

5

535 (Pa. 2009) ("Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary."). A reasonable investigation includes an attempt to secure any potential statements about the alleged incidents made by the victim and other witnesses. *Id.* at 535-36. Thus, Defendant satisfies the first prong of an ineffective assistance claim.

Here, it appears Trial Counsel was aware CYS had conducted some type of investigation of the incidents at issue, yet he did not attempt to secure the CYS files *via* subpoena or other court process. Trial Counsel's recollection was vague at the time of the PCRA hearing; based on his file notes, he believed he had spoken to a CYS representative as part of his investigation, and that he had been lead to believe there were no documents responsive to his request. The nature of any request as may have been made was not identified. Trial Counsel could not explain with any certainty why he did not pursue any potential witness statements within the CYS file materials beyond an informal conversation, and the record does not reflect any reasonable basis for failing to do so. Accordingly, the Court finds the second prong of the ineffective test is met.

Despite meeting the first two elements of an ineffective assistance claim, Defendant's PCRA claim fails because he has not demonstrated the required prejudice, *i.e*, that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. As to one of the statements Defendant points to in support of his claim – the statement attributed to M.B. that she had learned from her mother about Defendant doing inappropriate things to E.B. – Defendant fails to identify how he was prejudiced by not having the CYS file available to him for use at trial. Moreover, Defendant concedes in his Post Hearing Submission that this same information *was introduced at trial* through an alternative source. (*See* Def.'s Post Hr'g. Subm., at unnumbered p. 5, ¶ 32). Thus, even assuming the written statement of the CYS worker as to what M.B. reportedly told her would otherwise have been admissible, the evidence would have been cumulative, such that there is no reasonable probability that the trial outcome would have been different had Defendant had the CYS materials before trial. Similarly, regarding the interview statement by E.B.'s mother about having to ask E.B. questions to elicit information when the allegations initially came to light, Defendant does not articulate how having this statement by E.B.'s mother would have changed the outcome of the trial, and the Court finds no reasonable basis for so concluding.

6

Finally, as to the statement attributed to the minor victim, E.B., that Defendant would stop his assaultive behavior when someone got close to them, Defendant argues this statement was inconsistent with E.B.'s trial testimony and that the jury might have seized on this inconsistency to apply the "false in one false in all" principle and disbelieve her testimony in its entirety. (*See* Def.'s Post Hr'g. Subm., at unnumbered p. 19, ¶ 4). The Court does not agree that the statement attributed to E.B. is necessarily inconsistent with E.B.'s testimony or any other trial evidence. As the Commonwealth emphasizes, the statement attributed to E.B. was in the context of responding to the interviewer's question about what would make the abuse stop. (C.W. Br., at p.7, citing Pet. Exh. 1, at unnumbered p. 6). In addition, as to the incident that began when E.B. and M.B. were both present, E.B. testified at trial that Defendant did not touch her breast until M.B. left the room. (*Id.*, at 9, citing Jury Trial Tr. I, 3-28-19, at p. 74).[5] As to the incident when Joan Patterson, who moved slowly due to physical limitations, was in the vicinity, E.B. testified that the assault took place when Ms. Patterson was in the bathroom behind a closed door. (*Id.* at pp. 9-10, citing Jury Trial Tr., I at pp. 81, 147). The Court finds no reasonable basis, let alone a reasonable probability, to conclude that the jury would have found E.B.'s response to the CYS interviewer so inconsistent with her trial testimony that it would have led the jurors to reject her testimony altogether and lead to an acquittal. Defendant's claim thus fails.

B. *Voir Dire Proceeding Claims*

1. *Trial counsel improperly interjected concepts of race, ethnicity, heritage and citizenship during voir dire of the prospective jurors.*

*Voir dire* is properly limited to "questions that attempt to disclose a potential juror's lack of qualification or fixed opinion regarding the defendant's guilt or innocence." *Commonwealth v. Scott*, 212 A.3d 1094, 1103 (Pa. Super. 2019). Generally, our appellate courts have cautioned against *voir dire* questioning on racial issues except in cases involving racially sensitive issues. *See e.g., Commonwealth v. Richardson*, 473 A.2d 1361 (Pa. 1984). Such questions risk "creating racial issues in a case where such issues would not otherwise have existed . . . ", *id.* at 1364, and might "give[] credence to base stereotypic racial fallacies, serving no purpose but to exacerbate

---

[5] The Court notes that E.B.'s testimony on this issue was uncertain in some respects. When asked by the Commonwealth to clarify whether M.B. was present when Defendant touched her breast, E.B. responded that she was not. (*See* Jury Trial Tr. I, 3-28-19, at p. 74). On cross-examination, she was less certain as to whether M.B. had witnessed Defendant touch her breast at all, but felt certain she had seen Defendant kiss her, which lead M.B. to run upstairs. (*Id.* at pp. 125-26).

prejudices which the law should combat with all its vigor." *Id.* Nonetheless, limited questioning regarding racial matters is permissible if "sufficiently specific and probing to reveal prejudices which might have bearing upon the case." *Id.* In addition, Pennsylvania courts have recognized that inquiry into highly publicized matters that have the potential to prejudice jurors is permissible. *See e.g., Capoferri v. Children's Hosp. of Phila.*, 893 A.2d 133 (Pa. Super. 2006).

In the case at bar, Defendant contends Trial Counsel "needlessly interjected concepts of race, ethnicity, Mexican heritage, American citizenship, a presumption of guilty or criminality and U.S. politics into the *voir dire* process . . . .to the absolute prejudice of [Defendant] simply for the purposes [sic] of directing certain pejoratives at then President Donald J. Trump." (*See* Def.'s Post Hr'g. Subm., at unnumbered p. 22, ¶ 4). He claims that, but for this ostensible error, the outcome of the trial would have been different. (*Id.*, at unnumbered p. 26, ¶ 29).

The *voir dire* at issue was limited in fashion. Trial Counsel addressed the issue as follows:

> Mr. Velazquez is Latino, Hispanic. I wish I didn't have to get into this, but we're now in an era where our president says that people who come across the borders are rapists, they're murders [sic], they're this, they're that.
>
> Mr. Velasquez is not from Mexico. He's an American citizen. He grew up here, was born here, raised here. He's always been an American citizen, not that that should matter, but there are now people who may have this belief system and may be uncomfortable because the defendant in this case is Hispanic.
>
> Does anyone have that belief, and it's okay, we need you to be honest because you shouldn't be sitting in the jury if you do, but does anyone have that belief, that because Mr. Velazquez is Hispanic that that would be a problem for you?
>
> I see no hands.

(Tr. of Proceedings, Jury Selection, 2-4-19, at pp. 42-43).

Defendant's Post Hearing Submission on this issue is set forth in 29 separately numbered paragraphs, most, if not all, of which include multiple assertions, some citing legal principles, some including speculative assumptions, and some containing conclusory statements in support of an argument that Defendant was prejudiced by Trial Counsel's *voir dire* on this sensitive topic. The Court does not find within these many paragraphs any meritorious issue with respect

8

to the specific *voir dire* questions about which Defendant complains. Although, as the authorities set forth above demonstrate, *voir dire* regarding racial or ethnic issues must be approached carefully, there is no across-the-board prohibition on inquiry into potential biases on such matters. In fact, limited inquiry on such issues has been upheld when appropriate in the context of the case. *See Commonwealth v. Richardson, supra.* In addition, limited inquiry into highly publicized issues that might unduly influence potential jurors is proper. *See Capoferri, supra.* Here, it is beyond dispute that, in the timeframe when jury selection was taking place, February of 2019, there was substantial media attention regarding ideas espoused by the then-President that illegal immigration from Mexico was fueling crimes of violence.[6] The Court does not agree that Trial Counsel's limited questioning regarding this topic is inconsistent with the parameters of *voir dire* our appellate courts have found permissible in cases involving analogous types of issues and circumstances. *See Richardson* (addressing racially sensitive inquiry) and *Capoferri* (addressing potential prejudice due to highly publicized issues), *supra.* Thus, the Court concludes Defendant's claim lacks merit.

Assuming, *arguendo*, that Defendant's claim has merit, Defendant fails to meet the second prong of an ineffective assistance claim because he failed to prove Trial Counsel lacked any reasonable basis for the *voir dire* inquiry regarding potential ethnicity bias. At the PCRA hearing, Trial Counsel testified that he addressed the issue in *voir dire* because he wanted to be able to use for-cause strikes to eliminate prospective jurors who might harbor invidious biases that would be harmful to Defendant. (*See* PCRA Hr'g. Tr., A.M at pp. 38-42). Particularly given that these types of biases were so prevalent in media coverage at the time, the Court believes Trial Counsel's approach as a means to try and eliminate biased jurors was reasonable.

Finally, although the Court need not address the third prong given that Defendant's claim fails on prongs one and two, the Court is not persuaded that Defendant demonstrated any prejudice by Trial Counsel's limited *voir dire* questioning on the bias issue. Defendant asserts that potential jurors might have been so offended by the suggestion that they would be biased that they developed animus toward Defendant and his counsel, or that such animus developed because the jurors may have felt their politics were being directly challenged. (*See* Def.'s Post Hr'g. Subm., at unnumbered p. 24, ¶¶ 14-16). In addition, he argues the *voir dire* questioning

---

[6] There was no request for the Court to take judicial notice of this fact at the PCRA hearing, but neither party suggested there was any dispute that media coverage of this topic was permeating the press.

9

may have impacted his emotional state and lead him to present "insecurely to the Jury at Trial while sitting at counsel Table." (*Id.* at unnumbered p. 25, ¶ 24). According to Defendant, but for Trial Counsel's error in attempting to eliminate biased trial jurors, the outcome of his trial would have been different. (*Id.* at unnumbered p. 26, ¶ 29). There is no basis in the record to support these contentions, and the Court finds them to be without merit.

## 2. *Trial counsel engaged in improper personalization during voir dire*

Defendant claims Trial Counsel improperly stated during *voir dire* that he would have a problem being a fair and impartial juror for Defendant in a case involving child sexual abuse allegations because he is a father and had minor children. (*See* Def.'s Post Hr'g. Subm., at unnumbered pp. 27-28). According to Defendant, this constituted an improper personal appeal to the prospective jurors, permitted them to be "less scrutinizing" of children and permitted jurors who would have been more favorable to Defendant to exclude themselves from service because Trial Counsel set such a low bar. (*Id.* at unnumbered p. 28, ¶¶ 8-9).

The Court finds no merit in Defendant's claim. Although it is arguably improper for a lawyer to interject personal information in a jury proceeding, Defendant's argument that Trial Counsel's remarks lead the jurors to evade their duty to serve as fair and impartial jurors has no basis in law or in fact. The Court instructed the jurors of the duty to be fair and impartial throughout the course of the trial, and regarding the presumption of innocence. (*See e.g.,* Jury Trial Tr. I, 3-28-19, at pp. 8, 10-11, and 17, and II, 3-29-19, at pp. 83-84). "'It is well settled that the jury is presumed to follow the trial court's instructions[.]'." *Commonwealth v. Lamont*, 308 A.3d 304, 312 (Pa. Super. 2024). Here, the *voir dire* questioning at issue did not elicit an affirmative response by any prospective juror; *i.e.*, not one of the prospective jurors responded that they would be unable to abide by the duty to be fair and impartial or to honor the presumption of innocence. (Tr. of Proceedings, Jury Selection, 2-4-19, at pp. 37-42). The Court thus concludes that Defendant fails to meet the first prong of the ineffective assistance test.

Defendant also fails to meet the second prong of the test. Trial Counsel explained that he chose to relate to the prospective jurors as a father and a person who would find jury service in a case involving child sexual abuse charges difficult because he wanted to encourage individuals who may have entrenched biases harmful to his client to acknowledge that fact. (*See* PCRA Hr'g. Tr., A.M. at pp. 43-45, and P.M. at pp. 4-5). Trial Counsel endeavored, through his own acknowledgement, to make any such individuals comfortable admitting they could not be fair so

10

he could move to strike them for cause. (*Id.*). Clearly, Trial Counsel had a reasonable basis for this strategy and it was designed to protect Defendant's interest. Therefore, the second prong of the test for ineffectiveness fails. Given that Defendant failed to establish the first two prongs of the ineffective assistance test, Defendant's claim fails, and the Court need not address the third prong.

### C. *Trial counsel's ostensible admissions during cross-examination of the victim*

In his next claim for PCRA relief, Defendant argues that Trial Counsel's method of asking a series of leading cross-examination questions of the victim amounted to judicial admissions, thereby effectively conceding Defendant's guilt to the jury. (*See* Def.'s Post Hr'g. Subm., at unnumbered pp. 8-9, ¶¶ 51-52 and pp. 29-31).

The Court finds no merit in the argument that Trial Counsel made binding judicial admissions in conducting cross-examination of E.B. or any other witness, or that the jury perceived Trial Counsel's questions as such. Defendant cites no authority for the proposition that a question by counsel can serve as a "judicial admission," and there is no reasonable basis for concluding that a jury would find Trial Counsel's questions to be admissions by Defendant, let alone conclude that they were binding and could not be rejected. Indeed, jurors are routinely informed that questions put to witnesses by counsel are not evidence and may not be considered as such. This instruction was given to the jury during Defendant's trial. (*See* Jury Trial Tr. I, 3-28-19, at p. 24). As noted above, it is presumed that jurors follow the instructions of the court in performing their duties. Thus, the argument that the jurors at Defendant's trial not only considered the purported "admissions," but also concluded they were binding, lacks merit.

Furthermore, "trial decisions, especially those pertaining to the nature and extent of cross-examination, are matters of style and tactics involving subtle stratagems which ordinarily are within the exclusive province of the trial counsel." *Commonwealth v. Petras*, 534 A.2d 483, 487 (Pa. Super. 1987). Trial Counsel testified as to his strategy with respect to his chosen method of cross-examination. Trial Counsel attempted, through the use of leading questions framing the allegations, to create reasonable doubt in the jurors' minds that the events could truly have unfolded as E.B. claimed. (*See* PCRA Hr'g. Tr., A.M. at p. 57). The Court finds that Trial Counsel's method of cross-examination was a reasoned, strategic choice. Assuming the choice was reasonable, and the Court finds that it was, it is not for the Court to second-guess Trial Counsel's trial strategy in hindsight or opine as to whether a different strategy might have been

11

employed. *See, e.g., Commonwealth v. Perry*, 128 A.3d 1285, 1290 (Pa. Super. 2015). Thus, Defendant's claim also fails on the send prong of the ineffective assistance test, and his PCRA claim fails.

### D. *Trial counsel failed to call Joan Patterson as a trial witness*

Defendant next claims Trial Counsel was ineffective because he failed to call Joan Patterson as a witness at trial. Defendant contends Ms. Patterson could have offered testimony that would have been instrumental in securing Defendant's acquittal. (*See* Def.'s Post Hr'g. Subm., at unnumbered pp. 31-33). Thus, Defendant argues this claim is of arguable merit, Trial Counsel had no reasonable basis for failing to call Ms. Patterson, and Trial Counsel's failure to call Ms. Patterson caused such prejudice that there was a reasonable probability the jury could have come to a different verdict. (*See id.* at unnumbered p. 33, ¶ 12).

When claiming counsel was ineffective for failing to call a witness, a defendant satisfies the "reasonable basis" and "prejudice" prongs of the ineffective assistance of counsel test by establishing that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. . . . To demonstrate . . . prejudice a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." . . . Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness' testimony would have been helpful to the defense. . . . "A failure to call a witness is not per se ineffective assistance of counsel for such decision usually involves matters of trial strategy." . . .

*Commonwealth v. Sneed*, 45 A.3d 1096, 1108–09 (Pa. 2012) (internal citations omitted). It is clear from the record that the first four elements have been satisfied. Ms. Patterson existed, she was available to testify, Trial Counsel knew of her existence, and she was willing to testify. Accordingly, this claim turns on whether the absence of Ms. Patterson's testimony was so prejudicial as to have denied Defendant a fair trial. Based on the PCRA record, the Court concludes Defendant has failed to prove the required prejudice, such that his ineffective assistance claim fails.

During the PCRA hearing, Trial Counsel testified he had considered calling Ms. Patterson as a witness and had prepared her for testimony. He believed she could have testified

12

that she was in the basement where the 2017 assault occurred, that she stepped into a bathroom and closed the door for a very brief period of time and that, when she stepped back into the room, she did not observe any indication that something was amiss. She could have testified that E.B.'s demeanor did not demonstrate that anything had occurred in the short time she was not present in the room. (*See* PCRA Hr'g Tr., A.M. at p. 64). Trial Counsel also thought testimony from Joan Patterson that Defendant and E.B. had a positive relationship might be beneficial. (*Id.*).

Joan Patterson testified at the PCRA hearing as well. In brief summary, Ms. Patterson would have relayed to the jury that she had been in close proximity to one of the assaults, although she did not observe Defendant and E.B. at the time of the alleged the assault because she was behind the closed bathroom door. Ms. Patterson would have testified that, when she re-entered the space occupied by Defendant and E.B., it did not appear that anything untoward had occurred, and that Defendant did not appear to have an erection or show any other signs of arousal. (*See* PCRA Hr'g. Tr., P.M. at pp. 46, 48).

Although he had prepared Ms. Patterson to testify, Trial Counsel testified at the PCRA hearing that he reserved his decision as to whether to actually call her as a witness because there were downsides to her testimony as well. In particular, Trial Counsel was concerned about the likelihood that Ms. Patterson would testify to her perception that E.B., age 12 and 14 at the time of the assaults, had been the sexual aggressor pursuing Defendant, and that E.B. had fabricated the sexual assault charges after Ms. Patterson insisted that Defendant tell E.B. she must stop her sexual pursuit of him. (*See* PCRA Hr'g. Tr., A.M. at pp. 94-100). Trial Counsel felt this testimony would not have been at all helpful to Defendant's case, and was concerned that he would not be able to prevent Ms. Patterson from testifying to her theory on direct, and would not have been able to protect her from cross examination about the theory and regarding other damaging statements she had made about E.B. (*Id.*). To that end, pretrial communications between counsel introduced into evidence at the PCRA hearing showed that the Commonwealth was prepared to cross examine Ms. Patterson by use of statements she had made during taped jailhouse telephone conversations she had with Defendant before trial occurred. (*See* PCRA Hr'g. Tr., C.W. Exh. 1). A partial transcript of one such conversation was admitted at the PCRA trial, and additional portions of the audiotapes were played as a predicate for cross examination of Ms. Patterson. The evidence established that, in addition to victim blaming, Ms. Patterson

13

made numerous disparaging statements about E.B., such as calling her "fat" and "not attractive," claiming E.B. was "always groping" Defendant and was "constantly on" him, and that the day she was told she had to stop was what lead to the accusations and charges. (PCRA Hr'g. Tr., A.M. at p. 98). On cross at the PCRA hearing, Ms. Patterson admitted to having called E.B. a "vengeful little brat" during one of the recorded conversations and having stated that E.B. was going to suffer for this, and that "God doesn't like fake; God doesn't like ugly." (PCRA Hr'g. Tr., P.M. at p. 61). These are only examples of the various negative comments Ms. Patterson made regarding E.B. during audiotaped conversations with Defendant.

The Court believes the decision not to call Ms. Patterson at trial was more than reasonable under the circumstances, and that Defendant failed to prove that Ms. Patterson's testimony would have been beneficial to his case, or that he was somehow prejudiced by its absence. Ms. Patterson's proffered testimony about her whereabouts during the 2017 basement incident and her observations that there was no outward appearance of an assault when she returned was established through other trial evidence, (*see* Jury Trial Tr., I at pp. 147-48), and was also consistent with the testimony E.B. had given at the preliminary hearing. *(See* PCRA Hr'g. Tr., P.M. at pp. 18-19) (Trial Counsel explaining that Ms. Patterson would have been an important impeachment witness if victim had testified that things were actually amiss when Ms. Patterson returned from the bathroom, but victim had previously testified that Ms. Patterson wouldn't have noticed anything abnormal so Ms. Patterson's testimony would have just been duplicative and her testifying would have opened her up to negative cross-examination from the Commonwealth). Evidence of the close relationship between E.B. and Defendant was also presented. (*See* Jury Trial Tr. I, 3-28-19, at pp. 116-18). Furthermore, without any other evidence to corroborate Ms. Patterson's theory that the minor victim was, in reality, the sexual aggressor, (and Defendant points to none), it is doubtful that the jury would have accepted Ms. Patteson's testimony in this vein. Her testimony regarding this theory, as well as the disparaging comments about E.B., could very well have alienated the jury and invoked a sense of hostility toward Defendant.[7]

---

[7] Defendant argues Trial Counsel was surely persuasive enough to convince Ms. Patterson not to testify as to the motivations of the victim, and argues, without supporting authority or further explanation of the applicable law, that the damaging evidence the Commonwealth sought to introduce had Ms. Patterson testified would not have been permitted under the Pennsylvania Rules of Evidence. The Court observes that, at the PCRA hearing, Ms. Patterson indicated she wanted to share her thoughts of the victim's motivation with the jury. (*See* PCRA Hr'g. Tr., P.M. at p. 60).

In sum, Defendant has not demonstrated that Joan Patteson's testimony would have been beneficial to his case. Accordingly, Defendant failed to meet the prejudice element of his PCRA claim, and Defendant's fifth ineffective assistance of counsel claim is rejected.

## E. *Failure to present "best evidence" of prior inconsistent statement of lone minor eye witness*

Defendant argues Trial Counsel was ineffective for failing to present "best evidence" at trial of witness M.B.'s prior inconsistent statement. Specifically, Defendant contends Trial Counsel was ineffective for not playing a recorded video of an interview M.B. had with the Children's Advocacy Center ("CAC") regarding the allegations against Defendant. M.B. was called as a Commonwealth witness at trial, and Trial Counsel read portions of a transcript of the CAC interview during cross-examination of M.B. rather than playing the videotape.

As a threshold matter, the Court agrees with the Commonwealth that the "best evidence rule," Pa.R.E. 1002, is not properly at issue here. (*See* C.W. Br., at p. 22). Trial Counsel introduced M.B.'s prior statements for impeachment purposes during cross examination to show inconsistencies with her testimony at trial, and not for purposes of establishing the contents of the video interview. Furthermore, there was no suggestion at trial or at the PCRA hearing that the transcript Trial Counsel used for cross-examination was inaccurate in any manner. Whether to play an actual recording of a witnesses' prior interview during cross-examination or to confront the witness by using a transcript of the interview is a matter of trial strategy and tactics, and Defendant has failed to prove that there was no reasonable basis for proceeding by use of the transcribed interview alone, and has failed to show how he was prejudiced. The content – the inconsistency between the trial testimony and the interview statements – was presented to the jury and reiterated by Trial Counsel several times throughout the trial. (*See, e.g.*, Jury Trial Tr. II, 3-29-19, at pp. 11, 16). Defendant has not demonstrated that playing the actual recording of the interview offered a substantially greater potential for success, and the Court concludes Defendant has failed to meet the second prong of an ineffective assistance claim.

Finally, although the Court need not address the third prong of the test, the Court observes that Defendant made no showing that a reasonable probability exists that the outcome of the trial would have been different had the tape of M.B.'s interview been used instead of the

transcription of the interview.  Thus, Defendant failed to prove the prejudice required for a successful PCRA claim.

   F. *Trial counsel improperly bolstered the credibility of certain Commonwealth witnesses during closing argument*

   In his final claim, Defendant argues Trial Counsel improperly bolstered the credibility of certain Commonwealth witnesses during closing argument.  Defendant first takes issue with Trial Counsel's depiction of the victim, claiming Trial Counsel bolstered her credibility by commenting on her excellent character and his own discomfort in challenging her claims.  Defendant also argues Trial Counsel improperly bolstered the credibility of E.B.'s teachers, who were called as Commonwealth witnesses, by praising their actions.

   Trial decisions regarding closing argument are "matters of style and tactics involving subtle stratagems which ordinarily are within the exclusive province of counsel." *Commonwealth v. Petras, supra.* (applying principles regarding trial strategy in context of challenge to cross-examination choices).  Absent a showing that Trial Counsel lacked any reasonable basis for a particular strategy, it is not for the Court to second-guess the chosen methods in the context of a PCRA claim.  *See id.*  Here, the Court finds there was a reasonable basis for Trial Counsel's strategy in both of the challenged instances.

   At the PCRA hearing, Trial Counsel testified he chose to include the comments regarding E.B. in closing argument because she had presented at trial as a strong, effective, and sympathetic witness, and he believed the jury would connect with her and want to believe her.  Trial Counsel wanted the jury to still feel comfortable finding reasonable doubt despite liking and wanting to believe the victim, and to understand it was permissible to do so.  (*See* PCRA Hr'g.Tr., P.M. at p. 11).  Further, Trial Counsel testified there was little evidence presented at trial for the jury to conclude that the witness had a history of lying or other dishonest behaviors; thus, Trial Counsel felt he could not outright call the witness a liar without alienating the jury.  (*See* PCRA Hr'g. Tr., P.M. at pp. 11-12).  The Court observes that, in an apparent attempt to undermine E.B.'s testimony and version of events in a more subtle manner, just after making the comments challenged by Defendant, Trial Counsel did point out various inconsistencies between E.B.'s trial testimony and testimony given by her teachers.

   Similarly, as to the teacher-witnesses, Trial Counsel testified that he believed the jury would have felt the teachers were simply telling the truth as they knew it – *i.e.*, as it had been

16

told to them. (*See* PCRA Hr'g. Tr., A.M. at pp. 76-78). Trial Counsel testified that the teacher-witnesses had presented as credible witnesses, and that acknowledging that fact did not contradict Trial Counsel's theory that E.B.'s testimony did not prove her account of the incidents at issue beyond a reasonable doubt. (*Id.* at pp. 78-79). Trial Counsel also believed attacking these witnesses would not have been effective and, indeed, could have been harmful to the defense. (*Id.* at pp. 78-80).

The Court believes Trial Counsel's strategic choices were reasonable and designed to effectuate Defendant's best interest in both instances. Accordingly, Defendant's seventh ineffective assistance of counsel claim must be rejected.

## ORDER

AND NOW, this 29TH day of May, 2024, for the reasons set forth in the accompanying Opinion, Petitioner William M. Velasquez's PCRA Petition is DENIED in its entirety.

BY THE COURT:

Katherine V. Oliver, Judge

17